Filed 3/27/13  P. v. d'Sant Angelo CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DENISE RACHELLE D'SANT ANGELO,<br><br>    Defendant and Appellant. | 2d Crim. No. B236953<br>(Super. Ct. No. 1329410)<br>(Santa Barbara County) |

Denise Rachell D'Sant Angelo appeals from the judgment entered after her conviction by a jury of six counts of theft from an elder (Pen. Code, § 368, subd. (d)),[1] six counts of grand theft (§ 487, subd. (a)), and one count of unauthorized practice of law. (Bus. & Prof. Code, § 6126, subd. (a).)  As to six counts, appellant admitted an enhancement allegation that she had committed the offenses while released from custody in another felony case.  (§ 12022.1, subd. (b).)  She was sentenced to prison for 11 years.

Appellant contends that (1) her conviction of five counts of theft from an elder (counts 5, 7, 9, 11, and 13) violates the proscription against multiple convictions; (2) the imposition of unstayed sentences for each of these convictions violates the proscription against multiple punishment (§ 654); and (3) the trial court erroneously denied her

---

[1] All statutory references are to the Penal Code unless otherwise stated.

1

motion to discharge retained counsel and appoint new counsel to represent her. We affirm.

*Facts*

Cecilia Sanchez (Cecilia) and Rafael Robert Sanchez (Robert) were husband and wife. Cecilia was born in 1934, and Robert was born in 1933. Appellant befriended the couple and stole thousands of dollars from them. For purposes of this appeal, the relevant facts pertain only to counts 5, 7, 9, 11, and 13, all of which charged appellant with theft from Robert.[2] "As [appellant's] claims on appeal do not require a detailed statement of the underlying facts, we only briefly summarize them, viewing the evidence as a whole, in the light most favorable to the prosecution. [Citation.]" (*People v. Linder* (2006) 139 Cal.App.4th 75, 79.)

Count 5: underlying events occurred in March 2008. Robert paid appellant $1,500 for assistance in obtaining a modification of a loan on the Sanchezes' residence. But appellant did not render the agreed-upon services, and the Sanchezes did not obtain a loan modification. The standard in the industry is that persons who provide loan modification services do not get paid until the modification has been approved.

Count 7: underlying events occurred in August 2008. Robert paid appellant $1,500 for the preparation of an application for a loan modification, but she did not prepare the application.

Count 9: underlying events occurred in April 2009. Robert paid appellant $3,500 for research concerning his filing for bankruptcy. Appellant, who was not an attorney, "said she could handle it."

Count 11: underlying events occurred in May 2009. Robert paid appellant $2,000 to start a tamale business for his wife. Appellant said that the money would be used for "license and permits and stuff like that." But the business was never started.

---

[2] A sixth count of theft from an elder (count 3) names Cecilia as the victim. Appellant's contentions of erroneous multiple convictions and multiple punishment concern only the five counts that name Robert as the victim.

2

Count 13: underlying events occurred in August 2009. Robert paid appellant $7,600 for the purpose of hiring attorneys to file a lawsuit against the lender that had provided the Sanchezes' home loan. Appellant used the money to pay her rent and never hired any attorneys.

*Multiple Convictions*

Appellant contends that her convictions on counts 5, 7, 9, 11, and 13 violate the proscription against multiple convictions because they were based on a series of thefts committed against the same victim pursuant to one intention, one general impulse, and one plan, which was to "befriend and exploit a vulnerable couple in a financial bind." " '[A] defendant may be properly convicted upon separate counts charging grand theft from the same person' only if the evidence shows 'that the offenses are separate and distinct and were not committed pursuant to one intention, one general impulse, and one plan.' [Citation.]" (*People v. Jaska* (2011) 194 Cal.App.4th 971, 980.) "[O]n appeal we must review the record to determine whether there is substantial evidence to support a finding that the defendant harbored multiple objectives. [Citations.]" (*Id*., at p. 984.)

In determining whether the defendant harbored multiple objectives, the following factors are relevant: "whether the defendant acted pursuant to a plot or scheme [citations]; whether the defendant stole a defined sum of money or particular items of property [citations]; whether the defendant committed the thefts in a short time span [citations] and/or in a similar location [citation]; and perhaps most significantly, whether the defendant employed a single method to commit the thefts [citation]." (*People v. Jaska*, *supra*, 194 Cal.App.4th at pp. 984-985, fn. omitted.)

Considering the above factors, we conclude that substantial evidence supports a finding that appellant harbored multiple objectives. "[T]here was no evidence . . . that [appellant] acted pursuant to a plan or scheme to steal a defined set of [Robert's] assets. Rather, the evidence suggests that [appellant] stole various sums of money in an opportunistic manner, essentially whenever the need and/or occasion arose." (*People v. Jaska*, *supra*, 194 Cal.App.4th at p. 985.) Moreover, appellant "did not commit the charged thefts over a short time span." (*Ibid*.) The thefts were committed over a period

3

of approximately 17 months. In addition, appellant "employed a variety of distinct methods to steal from [Robert]." (*Ibid*.) As to the count 5 theft, appellant sought payment for assistance in obtaining a modification of the Sanchezes' home loan. The Count 7 theft was based on payment for preparing an application for the loan modification. As to the count 9 theft, appellant sought payment for services relating to Robert's bankruptcy filing. As to the count 11 theft, appellant sought payment for helping to start a tamale business. Finally, the count 13 theft was based on payment to appellant for the purpose of hiring attorneys to file a lawsuit. Accordingly, "the jury could have reasonably inferred that [appellant] did not commit all of [the] charged thefts pursuant to 'one intention, one general impulse, and one plan.' [Citation.]" (*Ibid*.)

*Multiple Punishment*

Appellant argues that the trial court erroneously failed to stay the sentences on counts 7, 9, 11, and 13 because the offenses charged in these counts and in count 5 were committed pursuant to "one indivisible continuous plan to exploit" the Sanchezes. " 'Section 654 prohibits multiple punishment for a single criminal act and for two crimes arising from a single indivisible course of conduct in which the defendant had only one criminal intent or objective. [Citation.] Thus: "If all of the crimes were merely incidental to, or were the means of accomplishing or facilitating one objective, a defendant may be punished only once. [Citation.] If, however, a defendant had several independent criminal objectives, he may be punished for each crime committed in pursuit of each objective, even though the crimes shared common acts or were parts of an otherwise indivisible course of conduct." [Citation.]' [Citation.]" (*People v. Powell* (2011) 194 Cal.App.4th 1268, 1296.)

"Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. [Citations.] Its findings will not be reversed on appeal if there is any substantial evidence to support them. [Citations.] We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably

4

deduce from the evidence.  [Citation.]"  (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

For the same reasons explained in *People v. Jones, supra,* we conclude that substantial evidence supports the trial court's implied finding that appellant had an independent criminal objective for each theft.  Moreover, the time interval "between the commission of these crimes afforded [appellant] ample opportunity to reflect and then renew her intent before committing the next crime."  (*People v. Andra* (2007) 156 Cal.App.4th 638, 641.)  "[W]here a course of conduct is divisible in time it may give rise to multiple punishment even if the acts are directive to one objective.  [Citation.]  If the separation in time afforded defendants an opportunity to reflect and to renew their intent before committing the next crime, a new and separate crime is committed.  [Citation.]"  (*People v. Louie* (2012) 203 Cal.App.4th 388, 399.)  Thus, pursuant to case law prior to *Correa*, no violation of section 654 occurred.

Nothing in *People v. Correa* (2012) 54 Cal.4th 331, 334, 340-341,where  our Supreme  Court held that section 654 bars multiple punishment only for violations of different provisions of law, not violations of the same provision of law, requires us to rule in appellant's favor.  In *Correa* our Supreme Court decided that its holding would apply prospectively only.  (*Id*., at p. 344.)  That holding, therefore, does not apply to appellant.

*Denial of Appellant's Request to Discharge Retained Counsel*

The matter was set for trial on December 6, 2010.  On that date appellant requested a continuance because she needed "additional time to get ready to be a persuasive witness."  The trial court found that there was no good cause for a continuance and denied it.  The following day, however, the parties agreed to continue the trial to January 18, 2011.  This date was later vacated, and the case was set for trial on April 5, 2011.  On that date appellant moved to continue the trial, and the motion was trailed to the following day.  On April 6, 2011, the court announced, "The matter's scheduled for trial proceedings . . . ."  Appellant's counsel said that he was moving to continue the trial because his client "has some medical and physical conditions that are impairing her

5

ability to prepare herself as a witness and to be a witness in her trial." The trial court denied the motion.

Defense counsel then advised the court that appellant had asked that he be relieved as privately retained counsel. Counsel requested that the court conduct a hearing outside of the presence of the prosecutor pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). The court replied that *Marsden* "has to do with public counsel." Counsel responded: "It does, but . . . [appellant] can't, this close to trial, fire me and substitute somebody else in. She needs the Court's permission to do that, and she has the [right to] tell the Court what the basis of her request is." The prosecutor stated: "I agree that she needs to give a reason . . . for the Court to make a determination. What I disagree with is that it's done in private." The court conducted a hearing in the prosecutor's presence.

During the hearing, appellant said she was indigent and requested that the court appoint a new attorney to represent her. Appellant wanted to discharge retained counsel because he had failed to file an opening brief in an appeal from her conviction in another case. Because of his failure, the appeal had been dismissed.[3] Appellant said that she was "very fond" of counsel, got "along very well" with him, and had "a great deal of respect for him." But someone from the California Appellate Project informed her that counsel "had a conflict because of the fact that the opening brief never got filed." Counsel explained that he had not filed an opening brief because "there was no viable legal argument" that could be made based on the record on appeal. Counsel said that he had recommended that appellant file a petition for a writ of habeas corpus. Appellant's only other complaints were that she had not had adequate time to meet with counsel and to examine boxes of documents.

The trial court told appellant that it did not "see any reason to delay matters to have [her] secure other counsel." The court declared: "[B]ased on the colloquy that's

---

[3] We reinstated the appeal and appointed new counsel to represent appellant. In an unpublished opinion, we modified the judgment to impose mandatory fees and affirmed the judgment as modified. (*People v. D'Sant Angelo* (Oct. 30, 2012) B225609.)

occurred here in court in chambers, I don't see any conflict with reference to [counsel] continuing to represent you."

### Marsden

Appellant contends that "the trial court erred in holding a *Marsden* hearing and using *Marsden* principles in this case." (Bold and some capitalization omitted.) "The legal principles governing a *Marsden* motion are well settled. ' "When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance. [Citation.] A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citations]." [Citations.]' [Citation.]" (*People v. Lara* (2001) 86 Cal.App.4th 139, 150.)

*Marsden* does not apply where, as here, a defendant is represented by privately retained counsel. "In contrast to situations involving appointed counsel, a defendant may discharge his retained counsel of choice at any time with or without cause. [Citation.]" (*People v. Lara*, *supra*, 86 Cal.App.4th at p. 152.) "The court must not consider whether the defendant is indigent and will require appointment of counsel in ruling on his timely motion to discharge retained counsel. [Citation.]" (*Id*., at p. 154.)

In the instant case, the trial court neither conducted a *Marsden* hearing nor applied *Marsden* principles. The court correctly insisted that *Marsden* did not apply because appellant was represented by retained counsel. The court declared, "*Marsden* is . . . when the Court has interceded and appointed counsel for an individual who's indigent." (Italics added.) The court decided to conduct a hearing, not a *Marsden* hearing, so that appellant could explain why on the day set for trial she should receive a continuance for the purpose of securing new counsel. If the trial court had conducted a *Marsden* hearing, it would have granted appellant's request to exclude the prosecutor from the hearing. (See *People v. Dennis* (1986) 177 Cal.App.3d 863, 871 [" 'the better practice [in a *Marsden*

7

hearing] is to exclude the district attorney when a timely request is made to do so by the defendant or his counsel' "].)

*Abuse of Discretion*

"A . . . defendant's right to discharge his retained counsel . . . is not absolute. The trial court, in its discretion, may deny such a motion if discharge will result in 'significant prejudice' to the defendant [citation], or if it is not timely, i.e., if it will result in 'disruption of the orderly processes of justice' [citation]." (*People v. Ortiz* (1990) 51 Cal.3d 975, 983.) Appellant argues that the trial court abused its discretion in denying her motion to discharge retained counsel. (AOB 65-71)

"[U]nder the applicable test for retained counsel, the court should 'balance the defendant's interest in new counsel against the disruption, if any, flowing from the substitution.' [Citation.]" (*People v. Keshishian* (2008) 162 Cal.App.4th 425, 429.) Here, the appointment of new counsel on the day set for trial would have caused a significant " 'disruption of the orderly processes of justice.' " (*People v. Ortiz, supra*, 51 Cal.3d at p. 983.) "An indefinite continuance would have been necessary . . . . Witnesses whose appearances had already been scheduled would have been further inconvenienced by an indefinite delay." (*People v. Keshishian, supra*, 162 Cal.App.4th at p. 429.) Furthermore, the victims were over 70 years old, and Robert was in poor health. In 2009 Robert underwent quadruple bypass surgery. His children told the prosecutor that, since the surgery, he had "been in and out of the hospital . . . [for] just generalized bad health." Thus, if the trial were continued, there was a risk that Robert would be unable to attend the trial.

The court reasonably concluded that appellant's reason for discharging retained counsel did not "justify the disruption to the judicial process that would have ensued." (*People v. Keshishian, supra*, 162 Cal.App.4th at p. 429.) Appellant had been informed that counsel had a conflict because he had not filed an opening brief in her appeal in another case. But counsel may have had good cause for not proceeding with the appeal. Counsel explained that he had not filed an opening brief because the appeal lacked merit.

8

Counsel had recommended that, instead of appealing, appellant file a petition for a writ of habeas corpus.

Moreover, the trial court could have reasonably found that appellant's motion to discharge retained counsel was a ruse to delay the trial. Four months earlier, appellant had requested a continuance because she needed "additional time to get ready to be a persuasive witness." Appellant did not move to discharge retained counsel until after the trial court had denied her request for a further continuance. It is reasonable to infer that appellant would not have moved to discharge retained counsel if her request for a further continuance had been granted. Appellant never indicated that she was " 'represented by retained counsel [she] no longer trust[ed].' " (*People v. Ortiz*, *supra*, 51 Cal.3d at p. 982.) Appellant said that she was "very fond" of counsel, got "along very well" with him, and had "a great deal of respect for him." Accordingly, the trial court acted within its discretion in denying appellant's motion to discharge retained counsel.

*Disposition*

The judgment is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

9

Frank J. Ochoa, Judge

Superior Court County of Santa Barbara

_____

Kathleen M. Redmond, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Nima Razfar, Deputy Attorney General, for Plaintiff and Respondent.