Filed 9/3/13  P. v. Chatman CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B238237 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA087422) |
| v. | |
| DARRYL CHATMAN, | |
| Defendant and Appellant. | |

APPEAL from the judgment of the Superior Court of Los Angeles County. Richard R. Romero, Judge.  Affirmed.

Michael Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Darryl Chatman was convicted by jury of one count of carjacking. On appeal, defendant contends the court erred in denying his request for substitute counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118, 123-125 (*Marsden*), and that he was denied the effective assistance of counsel. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Sometime shortly before 5:00 on the morning of November 23, 2010, three individuals called 911 and reported a car accident involving a black Chevy Silverado truck in the vicinity of 7th Street and Atlantic Boulevard in the City of Long Beach. The individuals reported the sound of tires "burning" rubber, and of the truck hitting several parked cars. Police officers were dispatched to the scene.

Esther Gale lived near the site of the accident and awoke to the sound of screeching tires. She stepped outside, smelled the distinct odor of burning rubber, and saw a black truck careening down the street, hitting parked cars, a fence, at least one tree and ultimately coming to a stop near an alley. She saw an individual get out of the truck, wearing a plaid shirt. He had a cell phone to his ear, and he looked right at her as he walked past and turned the corner.

James Richardson, a patrol officer with the Long Beach Police Department, reported to the scene in response to the dispatch call. He saw a black truck crashed on the sidewalk of 7th Street, near Lime Street. Several bystanders told him they saw individuals running down Lime Street. As Officer Richardson drove down Lime Street, he saw a Hispanic male waving his arms at him "frantically" and trying to get his attention.

Mario Reyes was the man who flagged down Officer Richardson. Mr. Reyes had been driving his truck near 8th Street on his way to his job loading fruit. While stopped at an intersection, a man he did not know (but later identified as defendant) walked up to the passenger side of his truck. The window was rolled down and defendant asked if Mr. Reyes had any change. He said no, at which point defendant tried to yank open the passenger door, yelling at Mr. Reyes to give him the keys to the truck and leave. Defendant also pointed to some sort of identification badge on his shirt and claimed to be a police officer.

2

Defendant opened the passenger side door, climbed into the truck and tried to position himself between Mr. Reyes and the steering wheel. The two fought to control the steering wheel. Mr. Reyes pressed his foot on the brake pedal, but defendant stepped on the gas, causing the tires to burn rubber. Defendant eventually was able to commandeer the truck down the street a short way toward 7th Street, veering onto the sidewalk, hitting three parked cars and eventually crashing to a stop. The air bag deployed, hitting Mr. Reyes. Defendant fled the vehicle and ran down an alley.

Mr. Reyes followed defendant and then saw Officer Richardson's patrol car and flagged him down. Mr. Reyes pointed out defendant, who was still in the alleyway. Officer Richardson told defendant to stand by the front of the patrol car. He noticed defendant was breathing heavily and smelled of alcohol. He performed a patdown search of defendant and found several items in his front pants pocket, including three cell phones. Officer Richardson showed the phones to Mr. Reyes, and Mr. Reyes identified two of the phones as his. Both of his phones had been set to Spanish and had been in his truck before the incident.

Ms. Gale identified defendant in a field identification as the man she saw get out of the truck and walk past her on the sidewalk.

Defendant was charged with one count of carjacking (Pen. Code, § 215, subd. (a))[1] and one count of impersonating an officer (§ 146a, subd. (b)). It was also specially alleged defendant had suffered a prior qualifying strike within the meaning of the Three Strikes law. (§ 1170.12, subds. (a)-(d).) Defendant pled not guilty.

Defendant made his first *Marsden* motion on February 24, 2011. Defendant advised the court he felt his court-appointed attorney, Mr. Russ, was not keeping in touch with him, had not tried to present a defense at the preliminary hearing, and was not following through on inconsistencies in the statements made by the victim, Mr. Reyes. Defendant contended there had been no carjacking and that his version of the incident would have been bolstered by showing that Mr. Reyes had given testimony at the

---

[1] All further undesignated statutory references are to the Penal Code.

preliminary hearing that differed from his statements to the police as reflected in the police report.

The court explained the purpose of a preliminary hearing and that the defense often chooses not to "show [its] hand" to the prosecution, and that it is unlikely for a case to be dismissed at that stage in the proceedings. The court allowed defendant to clarify and be more specific about his concerns and then offered Mr. Russ an opportunity to respond. Mr. Russ explained he had spoken with defendant numerous times and was taking his claimed defense seriously. He was attempting to investigate defendant's assertion that Mr. Reyes was in fact not a victim but part of a drug-selling operation, and that there had been no carjacking, but only a drug sale that went badly. Mr. Russ said time waivers were necessary to perform a complete investigation because individuals were hesitant to speak honestly about something that could incriminate them.

At the conclusion of the lengthy discussion with the court and counsel, defendant said he would continue with Mr. Russ as his lawyer. The motion was denied. Thereafter, defendant waived time for several months to allow Mr. Russ the opportunity to investigate and prepare his defense.

On the eve of trial, defendant made a second *Marsden* motion. Defendant complained he had been expected to waive time for trial for some 10 months and yet Mr. Russ had apparently not completed the investigation into defendant's defense. He expressed his concern that Mr. Russ did not believe or understand the importance of the three cell phones found on him by the police and what the records for those phones could reveal about the parties' relationship in drug dealing. Defendant claimed Mr. Russ was defending the credibility of Mr. Reyes and he was very uncomfortable with him. The court again allowed Mr. Russ to respond and allowed defendant to reply and clarify his concerns.

Mr. Russ said he told defendant he had reservations about presenting a defense that relied solely on claiming the victim was lying about the incident, particularly when he felt Mr. Reyes did not appear to lack credibility during his testimony at the preliminary hearing. He said he never told defendant he would not present that defense, or attempt to highlight the inconsistencies in Mr. Reyes's statements. He merely

4

explained his concern about hinging the entire defense on showing Mr. Reyes to be a liar. Mr. Russ explained that phone records he had subpoenaed for the three cell phones had not shown the call activity defendant had hoped they would. His attempt to speak with possible witnesses had not been successful either, which he indicated was not surprising "given that we're trying to say that they were involved in drug selling." Mr. Russ sought to assure defendant that he was diligently working on the defense and that he would present his defense to the jury as best he could under the circumstances.

After a discussion off the record with Mr. Russ, defendant advised the court that he'll "keep him on." The motion was denied.

Trial by jury started on September 26, 2011. Defendant made a third *Marsden* motion on the morning of the first day of trial. Defendant informed the court he was frustrated, that Mr. Russ failed to properly appreciate his defense, and had failed to timely and thoroughly investigate the defense to uncover supporting evidence to bolster his version of events. Defendant asserted in particular that, despite claiming to do so, Mr. Russ had not obtained all of the relevant records for the three cell phones. He also asserted the victim of the alleged carjacking, Mr. Reyes, was not a victim, but an intermediary for a drug dealer, "Maria," and that he was supposed to deliver drugs to defendant for sale. Defendant explained the phone records were crucial because they would show Mr. Reyes had had telephone contact with Maria or "Greg" (another individual involved in the sales), supporting defendant's claim that Mr. Reyes was part of the drug sale operation and that he fabricated the carjacking story to protect himself from criminal liability.

The court sought to clarify defendant's position. "THE COURT: Okay. [¶] So you're hoping that getting the phone records of number X, that number X is going to show a call to number Y, and number Y belongs to the victim? [¶] THE DEFENDANT: Yes, sir."

Mr. Russ then explained he had indeed subpoenaed the records for all three cell phones, but had not received a return as to one of the phones. He said the records received for two of the phones did not show the call activity defendant had hoped. He described pursuing the missing records for the third phone as a "moot" point "because I

5

was able to get the records of the two other parties that [defendant] was hoping we would be able to show were called by the alleged victim in this case, and one of those parties, in particular . . . Maria – she is the one who is allegedly a drug dealer. I have all her phone records. I have gone through them carefully, and she has no phone calls during that period of time to . . . the victim in this case, which is what [defendant] was saying was happening. And that was quite an exhaustive effort to get those phone records." Mr. Russ also indicated there were no relevant calls for Greg.

When asked by the court if he had any other concerns with Mr. Russ's representation, defendant said Mr. Russ had threatened him that he "better watch it" because "there is a fine line between attorney/client privilege." The court expressed its confusion about what defendant was trying to relate, and defendant said he understood Mr. Russ to be threatening to tell the prosecutor about their privileged communications or "something to that effect." Mr. Russ said he was not certain what defendant could possibly be referencing and that he would never threaten a client, and did not threaten defendant in any way.

The court then said: "Mr. Chatman, my sense is that you're frustrated with the case, and Mr. Russ is a good target for that frustration. Perhaps, also, you know what's going to happen at trial and you're trying to avoid that. So that's my suspicion, sir, that this is all intended to delay things. [¶] I want to make sure you get a fair trial, and Mr. Russ is a great lawyer. You're lucky to have him. There is no basis to excuse him. So I find that there is no violation here and Mr. Russ is doing an excellent job of defending Mr. Chatman." The court denied defendant's motion.

Defendant then exercised his right to represent himself pursuant to *Faretta v. California* (1975) 422 U.S. 806. The court questioned defendant on the record about his request to represent himself at trial, and found defendant to have made a knowing and voluntary decision to waive his right to counsel and represent himself. Mr. Russ was relieved of his appointment.

During trial, defendant presented his defense that Mr. Reyes had fabricated the carjacking story and was part of a drug-selling operation, making reference to that theory in both his opening statement and closing argument, and attempting to develop it during

6

his cross-examination of the prosecution's witnesses. Mr. Reyes denied being a drug dealer and of knowing defendant, Maria or Greg. Mr. Reyes identified two of the cell phones recovered from defendant as belonging to him, and that he had set both to the Spanish language. He said his cell phone was a Samsung with a phone number ending in 7719,[2] and that the other phone did not work.

Officer James Craig testified about his review of the electronic contents of the three phones recovered from defendant. He explained that two of the phones were Samsung models, and the other was a Motorola. One of the Samsung models had the phone number ending in 7719. There was no call activity at all on that phone on November 23, 2010, the date of defendant's arrest on the carjacking charge. The last incoming call on November 22 was at 5:10 p.m., and the last outgoing call was at 11:37 p.m. None of the calls indicated a "Maria" as the identified contact. Defendant specifically asked Officer Craig if any of the incoming or outgoing calls for that phone referenced the phone number ending in 9182.[3] Officer Craig said no.

Ms. Gale testified at trial and identified defendant as the man she saw getting out of the truck, who then walked past her talking on a cell phone. At the conclusion of the prosecution's case, defendant exercised his right not to testify in his own defense and did not call any defense witnesses.

While the jury was deliberating, the prosecution moved to amend the information to include an omitted allegation identifying defendant's prior qualifying strike under section 667, subdivision (a)(1) (mandatory five-year enhancement for prior strike qualifying as serious felony). The court granted the prosecutor's motion.

The jury found defendant guilty of carjacking, but was unable to reach a verdict on count 2, impersonating an officer. On the prosecution's motion, count 2 was dismissed. Defendant waived his right to a jury trial on the bifurcated prior allegations. Defendant

---

[2] For privacy reasons, we have not included the full telephone number set forth in the record.

[3] The record does not reflect to whom this number belongs, but presumably it is a number defendant believed was pertinent to his defense.

subsequently admitted his prior conviction for robbery (§ 211).  The court found it true and continued the matter for sentencing.  Defendant was sentenced to 23 years in state prison.  This timely appeal followed.

**DISCUSSION**

### 1. The *Marsden* Motions

It is well-established that a criminal defendant has the right to timely seek substitution of appointed counsel based upon a showing of inadequate representation or an irreconcilable conflict.  (*Marsden*, *supra*, 2 Cal.3d at pp. 123-125; accord, *People v. Ortiz* (1990) 51 Cal.3d 975, 984.)  But, the right is not absolute.  " 'A defendant is entitled to have appointed counsel discharged upon a showing that counsel is not providing adequate representation or that counsel and defendant have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.' [Citation.]  When the defendant seeks to remove appointed counsel 'the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of counsel's inadequacy.' [Citation.]  The trial court's ruling is reviewed for abuse of discretion."  (*People v. Panah* (2005) 35 Cal.4th 395, 431.)  No abuse of discretion will be found, unless the court's failure to grant the defendant's request to substitute counsel results in the substantial impairment of the defendant's right to effective assistance of counsel.  (*People v. Gutierrez* (2009) 45 Cal.4th 789, 803.)

As to defendant's first two *Marsden* motions, defendant can claim no error because the record plainly shows that, after detailed discussions with the court as to the bases for his concerns, defendant voluntarily agreed to maintain the attorney-client relationship with his appointed lawyer, Mr. Russ.

In his third *Marsden* motion on September 26, 2011, defendant reiterated the same concern he raised in his first two motions, i.e., counsel did not obtain all the records for all three cell phones to show a preexisting relationship between the parties that would support defendant's story there had been no carjacking, only a drug deal that went awry.

As with the first two motions, the court allowed defendant to fully articulate his concerns on the record and asked Mr. Russ to respond and address defendant's reservations about his representation in reasonable compliance with the court's

8

obligations under *Marsden*. We find the court's inquiry into the grounds for defendant's discontent with Mr. Russ was more than adequate. (*People v. Abilez* (2007) 41 Cal.4th 472, 490-491.)

The record reflects Mr. Russ investigated the defense that a connection could be shown to exist between the parties through phone records. He explained that records for two of the phones subpoenaed did not show any connection. Mr. Russ acknowledged he did not obtain records in response to the subpoena for the third phone. But he was able to separately obtain the phone records of Maria and Greg, the two people who defendant believed had made drug-related calls to, or received calls from, Mr. Reyes, and the phone records of Maria and Greg showed no such calls to or from Mr. Reyes's cell phone. Mr. Russ's representation of defendant and preparation for trial cannot be characterized as incompetent or deficient simply because he did not pursue the records for the third phone, when other evidence he was able to obtain during the course of his investigation negated the proof defendant thought might be contained in those records.

The evidence at trial appears to have supported the absence of any call activity of the type defendant had hoped would be shown to have occurred. For instance, defendant specifically asked about whether phone number ending in 9182 was reflected on the contents of Mr. Reyes's phone. Officer Craig confirmed that it was not, and also stated there was nothing on Mr. Reyes's phone showing a contact named Maria. This evidence supports Mr. Russ's explanation during the third *Marsden* hearing that he had not found any relevant call activity on the phone records he obtained regarding Maria and Greg and the victim, Mr. Reyes.

There is no showing of an abuse of discretion by the court in denying defendant's September 26, 2011 *Marsden* motion.

### 2. Ineffective Assistance of Counsel

The burden is on defendant to establish ineffective assistance by a preponderance of the evidence. (*People v. Ledesma* (1987) 43 Cal.3d 171, 218 (*Ledesma*).) There are two elements to an ineffective assistance claim. "[A] defendant seeking relief on the basis of ineffective assistance must show both that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates, and that it

9

is reasonably probable a more favorable determination would have resulted in the absence of counsel's failings." (*People v. Cudjo* (1993) 6 Cal.4th 585, 623, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-696 (*Strickland*).)

On direct appeal, this burden can be stringent. When the record on appeal " ' "sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," *the claim on appeal must be rejected*.' [Citation.] A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding." (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267, italics added; *People v. Jones* (2003) 29 Cal.4th 1229, 1254 [ineffective assistance claim properly resolved on direct appeal only where record affirmatively discloses no rational tactical purpose for counsel's actions].)

To the extent defendant raises an ineffective assistance of counsel claim, it is based on the same conduct of which defendant complained during the *Marsden* hearings. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' [Citation.]" (*Strickland*, *supra*, 466 U.S. at p. 689.) As explained above, Mr. Russ's investigative efforts and explanation for not further pursuing the records of the third cell phone reflect competent, reasoned representation of defendant. Nothing defendant has presented overcomes the presumption that Mr. Russ's conduct in preparing for trial was anything other than "sound trial strategy" or the result of reasoned choices within his discretion as to the best course of action to pursue in that regard.

Moreover, "prejudice must be affirmatively proved. [Citations.] 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. . . . The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . [Citations.] Specifically, '[w]hen a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder

10

would have had a reasonable doubt respecting guilt. . . .' [Citation.]" (*Ledesma*, *supra*, 43 Cal.3d at pp. 217-218.)

Defendant has not shown a reasonable probability the jury would have entertained a reasonable doubt as to his guilt in the absence of the alleged errors by Mr. Russ. Ineffective assistance of counsel has not been affirmatively established.

## DISPOSITION

The judgment of conviction is affirmed.

GRIMES, J.

We concur:

RUBIN, Acting P. J.

FLIER, J.

11