[No. S010853. Nov. 26, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
CARLOS SHAWN ORTIZ, Defendant and Appellant.

COUNSEL

Deeana F. Lamb, under appointment by the Supreme Court, Michael Kresser and Gretchen Burford-Dernetz for Defendant and Appellant.

Gerald F. Uelmen and Ephraim Margolin as Amici Curiae on behalf of Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White and Richard B. Iglehart, Chief Assistant Attorneys General, John H. Sugiyama, Assistant Attorney General, Ann K. Jensen, Edward P. O'Brien, Aileen Bunney, David D. Salmon, Blair W. Hoffman and Christopher Grove, Deputy Attorneys General, for Plaintifff and Respondent.

OPINION

MOSK, J.—Defendant appeals from a conviction of second degree murder. The sole issue arises from the denial of defendant's motion to discharge

counsel: we are asked to resolve a conflict in the Courts of Appeal regarding the duty of a trial court when a defendant who has retained counsel, but becomes indigent, makes a timely motion to discharge his attorney and to obtain court-appointed counsel.

Here, the Court of Appeal held the trial court erred in denying such a motion on the ground that defendant failed to demonstrate his attorneys were incompetent. We conclude the Court of Appeal is correct: when a criminal defendant makes a timely motion to discharge his retained attorney he should not be required to demonstrate the latter's incompetence, as long as the discharge will not result in prejudice to the defendant or in an unreasonable disruption of the orderly processes of justice. For this reason, we affirm the judgment of the Court of Appeal reversing the conviction. In addition, although the Court of Appeal limited the scope of its analysis to the "erroneous denial of [defendant's] motion to discharge counsel," we also discuss—for the guidance of trial courts—the proper procedure for appointment of counsel after a trial court grants such a motion.

On June 17, 1985, defendant was charged with murder (Pen. Code, § 187) by an information filed in Santa Clara Superior Court. Attorney Daniel Hernandez, who had represented defendant at his preliminary hearing, appeared specially at the arraignment and received a continuance of the matter for defendant to obtain counsel. After two more such continuances the court, satisfied of defendant's indigency, appointed the public defender to represent him, and he pleaded not guilty. On July 18, 1985, defendant substituted Daniel Hernandez as attorney of record and, at various times, either Daniel Hernandez or Arturo Hernandez, or both, represented defendant until the matter reached the Court of Appeal.

A jury trial of the charge began on August 22, 1985. The central issue was the murderer's identity. After five weeks of trial and two days of deliberation, the court declared a mistrial because of juror misconduct. According to defense counsel, the jury was divided "more or less six to six" at that time.

After the court returned the matter to the master trial calendar, Arturo Hernandez appeared and obtained a continuance. On October 10, 1985, Daniel Hernandez was fined $100 for failing to appear with defendant. On November 27, the Hernandezes moved to withdraw as counsel, but the motion was denied; in support of their motion, they cited the failure of defendant's family to pay them in full either for their services at the first trial or for fees they advanced for expert testimony at that trial. They also cited defendant's inability to pay for future services.

On January 2, 1986, defendant filed a motion to discharge both counsel. ▪ ▪▪ ▪▪▪▪ The record bears the comment, "Defendant request[s] *Marsden* hearing."[1] Defendant's declared reasons for seeking to discharge the Hernandezes were the publicity that accompanied their concurrent representation of Richard Ramirez, who was subsequently convicted of the so-called "Night Stalker" crimes, their refusal to return his calls, and his dissatisfaction with their investigation of potentially exculpatory blood tests. The Hernandezes replied that the main issue was defendant's refusal to cooperate with them and the fact that defendant had shown a loss of confidence in their ability to represent him. The court heard the motion in camera and denied it on the ground that defendant had not demonstrated his attorneys' incompetence.

One week later, defense counsel moved for a continuance and a transcript of the trial at county expense, predicting that retrial would be even more "lengthy and complex" and would include "more witnesses and expert testimony" than the first. In support of the motion, Arturo Hernandez pointed to delays resulting from defendant's request to discharge them as counsel, his own motion to be relieved as counsel, and the concurrent Ramirez trial in Southern California. The transcript request was based on defendant's indigence. The court granted both motions.

On May 15, 1986, the court received two additional motions: one by the Hernandezes to be relieved, and another by defendant that was again labeled a *Marsden* motion. In a declaration in support of his motion, defendant listed, among other concerns, that (1) he did not believe the Hernandezes would represent him to their full capacity at trial, (2) he had requested but had not received preliminary hearing transcripts at county expense, (3) he owed money to the Hernandezes for the first trial and they were asking for more for the second, (4) the Hernandezes had told his mother and wife that the witnesses at the first trial would not testify at the second, and (5) although almost a year had passed since his first trial, the

---

[1] In *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44], we held that a defendant is deprived of his constitutional right to the effective assistance of counsel when a trial court denies his motion to substitute one appointed counsel for another without giving him an opportunity to state the reasons for his request. A defendant must make a sufficient showing that denial of substitution would substantially impair his constitutional right to the assistance of counsel (*People v. Smith* (1985) 38 Cal.3d 945, 956 [216 Cal.Rptr. 98, 702 P.2d 180]), whether because of his attorney's incompetence or lack of diligence (*In re Banks* (1971) 4 Cal.3d 337, 342 [93 Cal.Rptr. 591, 482 P.2d 215]; *People v. Crandell* (1988) 46 Cal.3d 833, 854 [251 Cal.Rptr. 227, 760 P.2d 423]), or because of an irreconcilable conflict (*People v. Stankewitz* (1982) 32 Cal.3d 80, 93-94 [184 Cal.Rptr. 611, 648 P.2d 578, 23 A.L.R.4th 476]; *Brown v. Craven* (9th Cir. 1970) 424 F.2d 1166, 1170). We require such proof because a defendant's right to appointed counsel does not include the right to demand appointment of more than one counsel, and because the matter is generally within the discretion of the trial court. (*People v. Marsden, supra*, 2 Cal.3d at p. 123.)

Hernandezes continued to waive time, did not speak to him, and failed to appear in court when required. The court denied both motions.

A series of continuances followed, as did further sanctions imposed on the Hernandezes for failing to appear at trial. Finally, in August 1986 defendant submitted the matter as a *"Bunnell* plea" (*Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592 [119 Cal.Rptr. 302, 531 P.2d 1086]), on the condition he not be found guilty of any crime more serious than second degree murder. On the basis of the preliminary hearing transcript, the transcript of the first trial, and the testimony of one prosecution witness, the court found defendant guilty of second degree murder and sentenced him to state prison for 15 years to life.

## I. *Defendant's Right to Discharge Retained Counsel*

■■■ Defendant contends, and the People agree, that a defendant—whether indigent or not—who seeks in a timely manner to discharge retained counsel, ordinarily should be permitted to do so. The Court of Appeal held the trial court erred in requiring defendant to prove the Hernandezes were incompetent before it would allow him to discharge them. We granted review to resolve a conflict between that holding—which is consistent with *People* v. *Stevens* (1984) 156 Cal.App.3d 1119 [203 Cal.Rptr. 505]—and two contrary decisions, *People* v. *Barnes* (1983) 146 Cal.App.3d 663 [194 Cal.Rptr. 317], and *South* v. *Superior Court* (1986) 188 Cal.App.3d 1055 [233 Cal.Rptr. 765].

### A. *Conflict of Decisions*

In *People* v. *Barnes, supra,* 146 Cal.App.3d 663, 665-667 (hereafter *Barnes*), the Court of Appeal, Third Appellate District, held that a criminal defendant's motion to relieve his privately retained counsel and appoint the public defender in his stead is governed by the same standard as a motion for substitution of one appointed counsel for another, i.e., the court must allow the defendant to explain his reasons and then should exercise judicial discretion. The court reasoned that when a defendant seeks appointment of the public defender, his motion "is tantamount to a substitution of appointed counsel . . . ." (*Id.* at p. 666.)

One year later, the Court of Appeal, Fifth Appellate District, in *People* v. *Stevens, supra,* 156 Cal.App.3d 1119 (hereafter *Stevens*), impliedly rejected *Barnes* (*id.* at p. 1127, fn. 6) and held that an indigent criminal defendant was denied his right to effective assistance of counsel when the trial court "unjustifiably" denied his request to relieve his volunteer attorney in favor of the public defender (*id.* at pp. 1121, 1123). The court concluded, "a

defendant's constitutionally protected interest in obtaining counsel of his choice encompasses the right to discharge retained counsel regardless of financial ability to hire another attorney. Absent a proper finding of unwarranted disruption of the orderly processes of justice, a court may not force a defendant who timely requests substitution to go to trial represented by retained counsel he no longer trusts." (*Id.* at p. 1128.)

Subsequently, a panel of the Sixth Appellate District of the Court of Appeal in *South* v. *Superior Court, supra,* 188 Cal.App.3d 1055, 1060, rejected *Stevens* and adopted the *Barnes* approach, stating, "We do not believe that a defendant's motion to discharge retained counsel . . . should be decided in a vacuum . . . . [A] court must concern itself with who will be representing the defendant if present counsel is discharged." The court held that the defendant, who requested appointment of the public defender, bore the burden of showing that his relieved counsel's representation would "substantially impair his right to counsel." (*Ibid.*)

Finally, in the case at bar a different panel of the Sixth Appellate District held to the contrary, stating that "where, as here, a criminal defendant brings a timely motion to discharge his retained attorney it is error to deny the motion on the grounds he has not demonstrated his attorney's incompetence." For the reasons given below, we adopt the approach taken by the Court of Appeal in this case and in *Stevens, supra,* 156 Cal.App.3d 1119.[2]

### B. *Right to Counsel of Choice*

■ The right of a criminal defendant to counsel and to present a defense are among the most sacred and sensitive of our constitutional rights. (*Magee* v. *Superior Court* (1973) 8 Cal.3d 949, 954 [106 Cal.Rptr. 647, 506 P.2d 1023].) While we have recognized competing values of substantial importance to trial courts, including the speedy determination of criminal charges, the state should keep to a "necessary minimum its interference with the individual's desire to defend himself in whatever manner he deems best, using any legitimate means within his resources" (*People* v. *Crovedi* (1966) 65 Cal.2d 199, 208 [53 Cal.Rptr. 284, 417 P.2d 868] (hereafter *Crovedi*)). A criminal defendant's right to decide how to defend himself should be respected unless it will result in "significant prejudice" to the defendant or in a "disruption of the orderly processes of justice unreasonable under the circumstances of the particular case." (*Ibid.*) In other words, we demand of trial courts a "resourceful diligence directed toward the

---

[2] We therefore disapprove *South* v. *Superior Court, supra*, 188 Cal.App.3d 1055, and *Barnes, supra*, 146 Cal.App.3d 663, to the extent they are inconsistent with the views expressed herein.

protection of [the right to counsel] to the fullest extent consistent with effective judicial administration." (*Id.* at p. 209.)

### C.  *Right to Discharge Retained Counsel*

The right of a nonindigent criminal defendant to discharge his retained attorney, with or without cause, has long been recognized in this state (*Gage v. Atwater* (1902) 136 Cal. 170, 172 [68 P. 581]; *Echlin v. Superior Court* (1939) 13 Cal.2d 368, 372 [90 P.2d 63, 124 A.L.R. 719]; 1 Witkin, Cal. Procedure (3d ed. 1985) Attorneys, § 82, p. 101), and is governed by Code of Civil Procedure section 284, subdivision 2 (*Mandell v. Superior Court* (1977) 67 Cal.App.3d 1, 4 [136 Cal.Rptr. 354]; *People v. Bouchard* (1957) 49 Cal.2d 438, 440-442 [317 P.2d 971]).[3] ▆ The right to discharge retained counsel is based on " 'necessity in view both of the delicate and confidential nature of the relation between [attorney and client], and of the evil engendered by friction or distrust.' " (*Todd v. Superior Court of San Francisco* (1919) 181 Cal. 406, 413 [184 P. 684, 7 A.L.R. 938].) In order to ensure effective assistance of counsel, a nonindigent defendant is accorded the right to discharge his retained attorney: "the attorney-client relationship . . . involves not just the casual assistance of a member of the bar, but an intimate process of consultation and planning which culminates in a state of trust and confidence between the client and his attorney. This is particularly essential, of course, when the attorney is defending the client's life or liberty." (*Smith v. Superior Court* (1968) 68 Cal.2d 547, 561 [68 Cal.Rptr. 1, 440 P.2d 65].) Thus, we conclude that the right to counsel of choice reflects not only a defendant's choice of a particular attorney, but also his decision to discharge an attorney whom he hired but no longer wishes to retain.

A nonindigent defendant's right to discharge his retained counsel, however, is not absolute. The trial court, in its discretion, may deny such a motion if discharge will result in "significant prejudice" to the defendant (*People v. Gzikowski* (1982) 32 Cal.3d 580, 587 [186 Cal.Rptr. 339, 651 P.2d 1145]), or if it is not timely, i.e., if it will result in "disruption of the orderly processes of justice" (*ibid.*; *People v. Lau* (1986) 177 Cal.App.3d 473, 478-479 [223 Cal.Rptr. 48]; *Crovedi, supra*, 65 Cal.2d at p. 208). As the court stated in *Sampley v. Attorney General of North Carolina* (4th Cir. 1986) 786 F.2d 610, 613, the "fair opportunity" to secure counsel of choice provided by the Sixth Amendment "is necessarily [limited by] the countervailing

---

[3] Code of Civil Procedure section 284 provides:

"The attorney in an action or special proceeding may be changed at any time before or after judgment or final determination, as follows:

" .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"2.  Upon the order of the court, upon the application of either client or attorney, after notice from one to the other."

state interest against which the sixth amendment right provides explicit protection: the interest in proceeding with prosecutions on an orderly and expeditious basis, taking into account the practical difficulties of 'assembling the witnesses, lawyers, and jurors at the same place at the same time.' " The trial court, however, must exercise its discretion reasonably: "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." (*Crovedi, supra*, 65 Cal.2d at p. 207 [defendant was entitled to two-month continuance so that he could be represented by retained counsel who was hospitalized at time of trial].)

While we do require an *indigent* criminal defendant who is seeking to substitute one *appointed* attorney for another to demonstrate either that the first appointed attorney is providing inadequate representation (*In re Banks, supra*, 4 Cal.3d 337, 342; *People* v. *Crandell, supra*, 46 Cal.3d 833, 854), or that he and the attorney are embroiled in irreconcilable conflict (*People* v. *Stankewitz, supra*, 32 Cal.3d 80, 93-94), we have never required a *nonindigent* criminal defendant to make such a showing in order to discharge his *retained* counsel.

■ With these rules in mind, we reach the issue whether a trial court may require an indigent criminal defendant to demonstrate inadequate representation by his retained attorney, or to identify an irreconcilable conflict between them, before it will approve the defendant's timely motion to discharge his retained attorney and obtain appointed counsel. We conclude that the reasons supporting the right of a nonindigent criminal defendant to discharge his retained counsel favor extension of that right to all criminal defendants, regardless of their economic status.

The relationship between an indigent criminal defendant and his retained attorney is no less delicate and confidential than that between a nonindigent defendant and his retained attorney, nor is the evil engendered by friction or distrust between an indigent criminal defendant and his attorney any less fatal to an effective attorney-client relationship. Moreover, we must be just as concerned about the effectiveness of counsel when the client whose life or liberty is at stake is indigent as when he is not: an indigent criminal defendant who is required to undergo a trial with an attorney from whom he believes he is receiving inadequate representation, or with whom he is locked in an irreconcilable conflict, is just as certainly deprived of the effective assistance of counsel as his nonindigent counterpart.

In fact, as shown below, it may be even more important for an indigent defendant to be able to discharge retained counsel: if his motion is denied, he must choose between proceeding with no legal assistance or continuing

with a retained attorney reluctantly serving on a pro bono basis. We are justifiably concerned about the right to counsel of choice, and thus the right to effective assistance of counsel (see *Maxwell* v. *Superior Court* (1982) 30 Cal.3d 606, 613 [180 Cal.Rptr. 177, 639 P.2d 248, 18 A.L.R.4th 333] [right to counsel of choice closely linked with the doctrine of effective assistance]), when a defendant is forced to choose between proceeding to trial without an attorney or continuing to trial with an attorney originally hired to represent him but whom he no longer is able to pay.

The risk in compelling a defendant to go to trial with unpaid counsel against his wishes and those of his attorney, is that the defendant will "get what he paid for." For example, defendant and his family were unable to pay the Hernandezes in full for the first trial, or for the experts retained to testify at that trial. Nevertheless, at the time of the mistrial the Hernandezes stated the jury was divided six to six on the issue of the identity of the murderer. The court thereafter returned the matter to the master calendar. During the period preceding the second trial, at which time they were convinced defendant could no longer afford to pay them, the Hernandezes (1) sought a number of continuances to prepare their case—in part because of delay caused by their concurrent representation of Richard Ramirez, (2) were sanctioned for repeatedly failing to appear in court, and (3) allegedly failed to return defendant's calls or to adequately investigate potentially exculpatory evidence. Only after the court had repeatedly denied efforts by the Hernandezes to withdraw, and motions by defendant to discharge them, did defendant submit a *Bunnell* plea.

This scenario suggests what is likely to happen if courts compel attorneys to represent criminal defendants without compensation against the wishes of both the lawyer and the defendant. Without evaluating the wisdom of defendant's *Bunnell* plea, we nevertheless recognize that one possible result of requiring an unwilling attorney to represent a defendant without compensation is that "Some attorneys may find shortcuts particularly seductive. In a close case, an attorney may encourage an indigent defendant to stipulate to judgment. This would effectively avoid the cost and time involved in a full trial." (Gilbert & Gorenfeld, *The Constitution Should Protect Everyone—Even Lawyers* (1984) 12 Pepperdine L.Rev. 75, 88; see also *State ex rel. Scott* v. *Roper* (Mo. 1985) 688 S.W.2d 757, 768 [52 A.L.R.4th 1031] ["quality of the uncompensated service can be expected to decrease in almost direct proportion to the loss of choice of the professional rendering the service"]; Uelmen, *Simmering on the "Backburner": The Challenge of Yarbrough* (1985) 19 Loyola L.A. L.Rev. 285, 308-310, 322-323 ["History should teach us that a double standard of justice is inevitable if we consign the indigent to seeking handouts from uncompensated volunteers . . . . Economics should teach us that legal services respond to the same laws of

supply and demand as do other products and services in our free economy."]; *Cunningham* v. *Superior Court* (1986) 177 Cal.App.3d 336, 354-355 [222 Cal.Rptr. 854] [the county and state public defender "were created in response to this concern over the shoddy quality of legal services donated to indigent criminal defendants"].) In this case, the threat of coerced, uncompensated representation could be alleviated very simply by allowing defendant to discharge the Hernandezes and to seek appointment of counsel by the court.

In addition, the policy concerns underlying the rule that a defendant generally is not entitled to more than one *appointed* attorney (see, e.g., *People* v. *Marsden, supra*, 2 Cal.3d at p. 123) are irrelevant when an indigent criminal defendant, like defendant here, makes a timely motion to discharge his *retained* attorney and obtain a public defender or other appointed counsel in the court's discretion. First, it is ordinarily appropriate to require the defendant who is seeking to substitute one appointed counsel for another to show cause, because he is requesting duplicative representation and repetitive investigation at taxpayer expense. That is *not* the case here: defendant is requesting appointed counsel for the first time in connection with his retrial. Accordingly, he should be treated no differently from a defendant who qualifies for representation by, and seeks appointment of, the public defender at the outset of the proceedings against him. No additional public expense or drain on the state's limited resources is at issue,[4] nor, as long as the motion is timely, is there a risk of any undesirable opportunity to "delay trials and otherwise embarrass effective prosecution" of crime (*People* v. *Williams* (1970) 2 Cal.3d 894, 906 [88 Cal.Rptr. 208, 471 P.2d 1008]). Second, unlike a *Marsden* defendant who will continue to be represented by an attorney at public expense if his motion is denied, the defendant in this case, on denial of his motion, will be represented by coerced, unpaid counsel, and exposed to all the attendant risks we discuss above.

Equally irrelevant in this context are the concerns that underlie the rule denying indigent defendants the right to choose which attorney will be appointed to represent them. (See *People* v. *Manchetti* (1946) 29 Cal.2d 452, 458 [175 P.2d 533] [delay of trial; convenience of court and prosecution]; *United States* v. *Thompson* (S.D.N.Y. 1944) 56 F.Supp. 683, 688-689 [expense; administrative concerns; imposition of too many demands on a single

---

[4] Indeed, at least one court has suggested it is unlikely that indigent criminal defendants will often seek to discharge retained counsel in favor of appointed counsel: such defendants frequently "will reject the services of a highly trained, completely competent public defender and be happy with the appointment of a private attorney of marginal or doubtful ability. Apparently, this has something to do with a deep distrust of the 'establishment' and since the public defender is supported by the taxpayer, he is suspect even though that office furnishes to those charged with crime highly competent legal services with no cost to the individual involved." (*In re J. G. L.* (1974) 43 Cal.App.3d 447, 451-452 [117 Cal.Rptr. 799].)

attorney].) While defendant will require appointment of an attorney if he is permitted to discharge the Hernandezes, the issue raised by the trial court is merely whether he should be permitted to discharge them without proving their incompetence or an irreconcilable conflict; there is no suggestion that defendant is asking the court to appoint any particular attorney to replace the Hernandezes.

We agree, therefore, with the Court of Appeal that a court must not consider whether a defendant is indigent and will require appointment of counsel in ruling on his timely motion to discharge retained counsel. To conclude otherwise would be to ignore the value we place on allowing defendants to defend themselves as they deem best, absent prejudice to themselves or unreasonable delay in the processes of justice. Although nothing we do here affects the rule that indigent defendants do not have the right to choose a particular attorney to be appointed at public expense, there is no interest compelling us to treat an indigent defendant any differently from a nonindigent defendant when he moves to discharge his retained counsel. In light of the importance of the right to counsel of choice and the sensitive nature of the relationship between a criminal defendant and his lawyer, we must not allow a defendant's indigence to prevent him from discharging in a timely manner the retained counsel he no longer wishes to represent him. (See *Griffin* v. *Illinois* (1956) 351 U.S. 12, 19 [100 L.Ed. 891, 899, 76 S.Ct. 585, 55 A.L.R.2d 1055] [stating that "[t]here can be no equal justice where the kind of trial a man gets depends on the amount of money he has."].)

Applying the law to the facts of this case, we agree with the Court of Appeal that the trial court erred by requiring defendant to demonstrate the incompetence of the Hernandezes before allowing him to discharge them. Defendant's motion, made after the mistrial and well before any second trial, was sufficiently timely; the timing reflects defendant's genuine concern about the adequacy of his defense rather than any intent to delay the retrial. On this showing, discharge of the Hernandezes would not have interfered with the "orderly processes of justice."

The People contend the error was not prejudicial. In fact, because appointment of counsel is left to the court's discretion (*Harris* v. *Superior Court* (1977) 19 Cal.3d 786, 795 [140 Cal.Rptr. 318, 567 P.2d 750]; *Drumgo* v. *Superior Court* (1973) 8 Cal.3d 930, 934-935 [106 Cal.Rptr. 631, 506 P.2d 1007, 66 A.L.R.3d 984]), they claim that we need only remand the case for the trial court to exercise its discretion to determine whether it would have appointed the Hernandezes. If the trial court rules it would have appointed the Hernandezes, they conclude, the judgment should stand, because the Hernandezes continued to represent defendant.

■    Reversal is automatic, however, when a defendant has been deprived of his right to defend with counsel of his choice. (*People* v. *Gzikowski, supra,* 32 Cal.3d 580, 589.) The right to counsel of choice, including the right to discharge retained counsel, furthers the dual goals of due process: (1) ensuring the reliability of the guilt-determining process by reducing to a minimum the possibility that an innocent person will be punished; and (2) protecting the ideal of human individuality by affirming the state's duty to refrain from unreasonable interference with a defendant's desire to defend himself in whatever manner he deems best. (*Crovedi, supra,* 65 Cal.2d at p. 206; Kadish, *Methodology and Criteria in Due Process Adjudication—A Survey and Criticism* (1957) 66 Yale L.J. 319, 346-347.) The right to counsel of choice is one of the constitutional rights most basic to a fair trial. Accordingly, it is clear that a criminal defendant need not demonstrate prejudice resulting from a violation of that right in order to have his conviction reversed. As stated in the controlling case of *Chapman* v. *California* (1967) 386 U.S. 18, 23 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065]: "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error . . . ." The right here is such a right.

■    Just as when a court improperly denies a defendant's motion to represent himself (*Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525]) or to replace counsel because of a conflict of interest (*Holloway* v. *Arkansas* (1978) 435 U.S. 475 [55 L.Ed.2d 426, 98 S.Ct. 1173]), or when an indigent criminal defendant is denied counsel altogether (*Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733]), we must presume prejudice when an indigent criminal defendant is forced to proceed with a retained attorney whom he has consistently, and in a timely manner, sought to discharge in favor of the public defender or other court-appointed counsel. We must not speculate as to the prejudicial effect of " 'injecting an undesired attorney into the proceedings' " (*People* v. *Courts* (1985) 37 Cal.3d 784, 796 [210 Cal.Rptr. 193, 693 P.2d 778]), especially when, as here, the defendant has repeatedly alleged inadequate assistance.

In fact, any standard short of per se reversal would "inevitably erode the right itself" (*People* v. *Courts, supra,* 37 Cal.3d at p. 796, fn. 11), by relegating appellate review of a constitutional right to mere speculation. As we suggested in *Courts* (*id.* at p. 796), to assess " ' "why or how an accused's trial was disadvantaged by injecting an undesired attorney into the proceedings would require an impossibly speculative comparison' " of the performance of the counsel whom the court refused to discharge with the unrealized performance of an appointed attorney. Furthermore, in this case we are concerned not only with what the Hernandezes did in the course of representing defendant, as reflected by the record, but also with what the

Hernandezes did *not* do following the trial court's error, as suggested by the *Bunnell* plea and defendant's allegations that the Hernandezes failed to adequately investigate potentially exculpatory evidence or to return his calls.

We therefore conclude that the judgment of the Court of Appeal reversing the judgment of conviction should be affirmed and the matter remanded for proceedings consistent with this opinion.

## II.  *Appointment of Counsel*

Although the Court of Appeal limited the scope of its analysis to whether defendant could discharge the Hernandezes without demonstrating impairment of his right to counsel, we also discuss, for the guidance of trial courts, the procedure for appointing counsel after an indigent defendant has discharged his retained counsel.

Penal Code section 987.2 (hereafter section 987.2) establishes the procedure by which counsel is to be appointed to represent an indigent defendant.[5] For example, in this case, once defendant was allowed to discharge the Hernandezes, the trial court would have been required to look first to the public defender. If the court found that because of a conflict of interest "or other reasons" the public defender had properly refused appointment (§ 987.2, subd. (a)(3)), then the court could have appointed private counsel.

Defendant responds he should not be "saddled" with appointment of the Hernandezes. ■ Section 987.2, however, offers no barrier to appointment of previously discharged counsel: appointment of counsel is properly in the discretion of the court (*Harris* v. *Superior Court, supra,* 19 Cal.3d at p. 795; *Drumgo* v. *Superior Court, supra,* 8 Cal.3d at pp. 934-935), and frequently, as here, it may be a more efficient use of both time and money to appoint the attorney who represented the defendant in an earlier proceeding than to begin again with a new attorney. In fact, because compliance with section 987.2 guarantees that appointed private counsel will be compensated, appointment of previously discharged counsel does not implicate the concerns raised here, in which the Hernandezes were forced to represent defendant without compensation.

---

[5] Section 987.2 establishes different procedures for appointment and compensation of counsel in Los Angeles and Orange Counties as well as in all other California counties. (See *id.,* subds. (a), (g); Gov. Code, §§ 28020, 28022, 28023.) Although we are concerned in this case only with the proper procedure in Santa Clara County, our conclusion, that courts must comply with section 987.2 when appointing counsel to represent indigent criminal defendants, applies no matter in which county the trial is held.

Defendant, however, answers that the discharge of a retained attorney implies more than just an inability to pay his fee. We agree this may often be the case. Accordingly, when a court appoints previously discharged counsel to represent an indigent defendant, the defendant, upon request, must be afforded a *Marsden* hearing in which he has the opportunity to explain why he believes appointment of that attorney will impair his right to counsel. This right to a hearing is the same right available to all indigent defendants who wish to substitute one appointed counsel for another.

The People respond that the trial court impliedly appointed the Hernandezes by (1) granting defendant a transcript of the first trial at county expense, thereby recognizing defendant's indigence, and (2) refusing to allow defendant to discharge the Hernandezes. We disagree.

The fiction of an implied appointment of counsel is inconsistent with the appointment procedures established by section 987.2. As we demonstrated above, in order to appoint the Hernandezes to represent defendant, the trial court first had to find that the public defender properly refused because of a conflict of interest or other reasons. There is no suggestion in the record, however, that the trial court first sought to appoint the public defender or that the public defender properly refused.

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Broussard, J., Panelli, J., Kennard, J., and Arabian, J., concurred.

Eagleson, J., concurred in the judgment.