Filed 4/20/16  P. v. Zapien CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSE ZAPIEN,<br><br>    Defendant and Appellant. | F069304<br><br>(Super. Ct. No. BF143567A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  David R. Lampe, Michael G. Bush and Brian M. McNamara, Judges.

Campbell Whitten and Jesse Whitten for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jeffrey A. White, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Jose Zapien was convicted of multiple felonies and sentenced to 41 years to life in prison.  He contends on appeal that the trial judge improperly denied his new trial motion, in which he alleged various pretrial and trial errors and ineffective

assistance of counsel. We find that the judge presiding at the trial readiness proceeding failed to properly address Zapien's request to discharge his privately retained counsel before trial and therefore reverse his convictions.

## STATEMENT OF THE CASE

On May 16, 2013, Zapien, age 18, was charged by amended information with two counts of kidnapping (Pen. Code, § 207, subd. (a);[1] counts 1 and 2); two counts of assault with a firearm (§ 245, subd. (a)(2); counts 3 and 4); two counts of making criminal threats (§ 422; counts 5 and 6); two counts of false imprisonment (§ 236; counts 7 and 8); one count of grand theft (§ 487, subd. (a); count 9); one count of carjacking (§ 215, subd. (a); count 10); two counts of second degree robbery (§ 212.5, subd. (c); counts 11 and 12); and two counts of kidnapping with the intent to commit a robbery (§ 209, subd. (b)(1); counts 13 and 14). It was further alleged Zapien personally used a firearm pursuant to section 12022.5, subdivision (a) in the commission of counts 1 through 12, and personally used a firearm pursuant to section 12022.53, subdivision (b) in the commission of counts 1, 2, and 10 through 12.

At the trial readiness hearing on June 21, 2013, Zapien orally asked to discharge his privately retained counsel. The court did not respond to the request except by instructing trial counsel to file a motion to discharge and set a hearing date of June 27 in another department. Instead of filing a motion to discharge, trial counsel filed a motion to withdraw due to an actual conflict of interest pursuant to California Code of Civil Procedure section 284 and California Rules of Professional Conduct 3-700, rule (B)(2). After holding an in-camera hearing with retained trial counsel (without Zapien present), the motion was denied by another judge on June 27, without addressing the earlier request to discharge trial counsel or making any inquiry of Zapien. Zapien's request to discharge retained counsel was never addressed or ruled on.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

2.

Jury trial began July 29, 2013, and on August 1, 2013, a jury found Zapien guilty on all counts and enhancements except counts 3 and 4. As to counts 3 and 4, the jury found Zapien guilty of the lesser included offense of assault (§ 240).

On October 11, 2013, the trial court granted Zapien's motion for new counsel to address issues of ineffective assistance of counsel.

On February 21, 2014, Zapien, through new counsel, filed a motion for new trial (§ 1181), arguing he received ineffective assistance of counsel; that he made a timely request to discharge retained counsel which was improperly denied; and that original counsel's motion to withdraw was improperly denied. The People filed opposition to the motion and, after a hearing, the motion was denied on March 28, 2014.

Zapien was sentenced to state prison for 41 years to life.

## STATEMENT OF THE FACTS

On April 15, 2012, Juan Fierros and his nephew Oscar Arreola made plans to go to the home of Ricardo Alvarez to have Alvarez install stereo equipment in Fierros's Cadillac Escalade. When the two arrived at Alvarez's home, Alvarez was not there. Fierros and Arreola left, but returned later that day to find Alvarez and another man in front of the house.

Fierros observed Alvarez and the other man go around the side of the house toward the backyard, so Fierros pulled his vehicle into the driveway. With Arreola still in the vehicle, Fierros went to the side door of the home, which provided access to the backyard. The side door was locked, but Alvarez "peeked out" and told Fierros to park his vehicle in reverse and wait for him in front of the house.

Alvarez then came out to the driveway and asked for the keys to the Cadillac. While Fierros and Arreola stood on the driveway, Fierros heard something breaking inside the car. When he looked in, he saw Alvarez on the telephone, the center console was broken off, and Alvarez was clipping wires.

3.

Fierros and Alvarez then saw two vehicles approach the house; one vehicle was a gold 1990's Toyota Camry and the other a dark blue sedan. Nine or 10 men, about five of whom had guns, exited the vehicles with their faces mostly covered with their shirts. One of the men, later identified by Fierros as Zapien, had a nylon over his face. The men told Fierros they liked his vehicle and were "going to take it." The men pointed guns at Fierros and Arreola, threatened them, and told them to get on the ground.

When Fierros told the men to take the Cadillac, they responded that he was going to come with them. The men hit Fierros and Arreola with their guns, zip tied them, socked and kicked them, and threw them in the back seat of the Cadillac. Fierros believed it was Zapien who zip tied him. The men put a shirt over Fierros's face, but it was loose enough that he was still able to see; his eyes were not covered. The men searched Arreola's pockets and took his cell phone. Zapien took Arreola's wallet.

While Fierros and Arreola were in the back seat of the Cadillac, Zapien was in the front passenger seat. Zapien turned around in his seat with his gun pointing at Fierros and Arreola and threatened to "smoke" them. The entire time, Zapien was holding a chrome gun with an extended clip. Although Zapien had the nylon on his face, both Fierros and Arreola were able to see through it clearly. Fierros still had the shirt around his head, but there was nothing over his eyes to obstruct his view of Zapien.

The man driving the Cadillac referred to Zapien as "Tinman" and asked him for directions. The other two vehicles that had approached Alvarez's house were behind the Cadillac and were carrying the other men.

Fierros asked Zapien to drop him and Arreola off and take the Cadillac. Zapien told Fierros that if they did everything right, they would go free.

After driving for 10 to 15 minutes, the vehicle stopped in an orchard. Fierros asked Zapien what had happened to Alvarez and Zapien said "we already threw that fool in the lake." The men then forcibly removed Fierros and Arreola from the vehicle, punching and kicking them in the process.

4.

Zapien subsequently removed the nylon from his head and asked Fierros if he had seen his face. When Fierros replied that he had, Zapien said, "Well, that's the last time you're going to see my face." Zapien was only six or seven inches from Fierros, who observed that Zapien had "little piercings" on the left side of his face. Zapien then tightened the shirt over Fierros's face and began walking Fierros and Arreola into the orchard and told them to get down on their knees. The men searched Fierros and Arreola's pockets, taking their money, jewelry and cell phones. At trial, Fierros reaffirmed he had no doubt Zapien was the man with the nylon on his face who threatened to kill him. When asked, Fierros recalled that he did not see any tattoos on Zapien's face.

Fierros and Arreola were on the ground for about 25 minutes while Zapien remained over them with a gun. Zapien again threatened to kill them. Fierros eventually heard sirens and heard Zapien and another man say, "It's the fucking cops." Fierros and Arreola then heard footsteps and people running.

Fierros was able to get up and get the shirt from his eyes by rubbing his head against a tree. Fierros could see officers shining lights into the fields and men running and hiding in the trees. Fierros told the officers he and Arreola had been taken hostage at Alvarez's house, driven to the orchard, and that the men wanted to kill them. Other officers and a helicopter searched the area for suspects, but none were located that evening.

The officers transported Fierros and Arreola to the police department where they were shown a photographic lineup around 3:00 a.m., about six hours after they were rescued. Arreola, who "appeared to be tired" and fatigued, identified a Christopher Ortiz[2] in a lineup and said he "looked like the individual that they refer to as Tinman." Fierros was not able to identify anyone in the initial lineup, although both identified

_____

**2**     No further investigation was done on Ortiz.

5.

Alvarez in a separate lineup. Fierros told Detective Jared Lukehart that the suspect "had a spiked eyebrow piercing and an 'N' tattoo on his left arm."

On August 29, 2012, a little more than four months after the incident, Officer Raymond Guerrero met with Fierros to show him a photographic lineup. Following an admonishment, Fierros "almost immediately" picked out Zapien's photograph. In doing to, Fierros commented on Zapien's face and his eyebrow and said he had the same features. Fierros told the officer he was "110 percent sure" Zapien was the person involved in the kidnapping. At trial, Fierros testified he was able to identify Zapien by his eyes, which looked "a little bit stretched out, kind of low." Fierros testified he told the deputies he was "110 percent sure" Zapien was the person involved, and he was still certain.

Officer Michael Strand had seen Zapien about "half a dozen times" in his work as a local police officer. On June 23, 2012, Zapien was photographed with an eyebrow piercing and a "hash mark in both eyebrows" where the hair was missing. According to Officer Strand, Zapien had a tattoo of a "D" and two skulls on his forearm, but he did not recall him having an "N" on his arm. When Officer Strand contacted Zapien in June of 2012, he did not recall Zapien having any tattoos on his face. At trial, however, Zapien had new tattoos under his right eye and on the back of his head. Officer Strand believed Zapien's moniker was "Triste."

*Defense*

Amanda Aguilar, who is married to Zapien's uncle, testified that Zapien was at her house on the date in question for a family barbeque celebrating Easter from 4:00 to 9:00 p.m. Aguilar acknowledged Zapien had been incarcerated for an entire year before she came forward to say Zapien had been at her house. Aguilar claimed this was due to the fact that she had not been aware of the date of the crimes Zapien had been accused of.

Zapien's girlfriend, Jaclyn Lopez, also testified she and Zapien went to a family barbeque on the date on question. They arrived between 4:00 and 5:00 p.m. and left

6.

between 9:00 and 9:30 p.m. She also claimed she did not come forward earlier because she was not aware of the date of the crimes Zapien had been accused of committing.

Zapien's sister, Connie Lozano, testified Zapien was at a barbeque from 4:00 p.m. to about 9:00 p.m. on the date in question, and Zapien was there the entire time. She claimed not to have known the date of the alleged incidents until "a few days ago."

## DISCUSSION

On appeal, Zapien contends the trial court improperly denied his motion for a new trial, which claimed "improper pretrial rulings and prejudicial legal assistance during the trial," (capitalization omitted) including improperly denying his pretrial request to discharge his retained attorney.

### *Background on Motion to Discharge Counsel*

At the trial readiness hearing on June 21, 2013, Zapien's privately retained counsel Benjamin Greene told the trial court, Judge McNamara[3], Zapien "would like to discharge [his] services and have a new attorney appointed." When asked by the court if that was correct, Zapien replied, "Yes." Greene was told to "file the motion to be discharged," to be heard June 27.[4]

On June 24, Greene instead filed a motion for leave to withdraw[5] as attorney of record. In the motion, Greene stated there was a "conflict in the present case" he

---

**3** Although the minute order for June 21, 2013, states Judge Bush presided, the reporter's transcript states it was Judge McNamara.

**4** The minute order for June 21, 2013, states "DEFENSE TO FILE A FORMAL MOTION TO WITHDRAW."

**5** Discharge of a retained attorney by a criminal defendant and withdrawing from representing a criminal defendant by a retained attorney are two distinct methods of terminating an attorney-client relationship. Both can be done by court order upon application of the client for discharge of his or her attorney or the attorney for withdrawal, after notice to the other. (Code Civ. Proc. § 284, subd. 2; Cal. Rules of Court, rule 3.1362).

7.

believed was a "sufficient basis for a motion to be relieved." He further noted "[a]n attorney has a duty and right to withdraw if the attorney's representation will violate the attorney's professional responsibility." In the attached declaration, Greene declared "[a]n actual conflict of interest has arisen" which mandated his "withdrawal pursuant to California Rules of Professional Conduct 3-700." No opposition was filed by the prosecution.

On June 27, the motion was heard by Judge Bush off the record in chambers, without Zapien present. Back in open court, Judge Bush stated, "I'm not going to put on the record what he said, but the grounds are not grounds to relieve him and have a new attorney when you're five days from trial. I'm going to deny the motion to withdraw."

On July 29, Zapien went to trial represented by Greene before Judge Lampe and, on August 1, 2013, was convicted by jury.

On October 11, 2013,[6] the continued date set for sentencing, Zapien provided the trial court with a letter noting various pretrial and trial issues focusing on ineffective assistance of counsel which was, in essence, a request for new counsel. In response, the trial court held a hearing with only defendant and Greene present. The court described the hearing as a "posttrial *Marsden* hearing," prospective in nature. After reconvening in open court and hearing argument from both sides, the trial court stated "the careful and appropriate process at this point is to relieve Mr. Greene as counsel" upon "substitution of counsel." After telling the court he could afford to retain new counsel, Zapien then stated he wished to check with his family about retaining replacement counsel. The court stated he had the right to other counsel and, if he could not afford one, he had the right to have a public defender appointed.

---

**6** The reporter's transcript incorrectly lists the date as October 13, instead of October 11, 2013.

On November 8, 2013, the trial court specifically appointed private attorney Jesse Whitten for the purpose of evaluating Zapien's claims of ineffective legal representation. On November 22, 2013, Whitten was substituted in as retained counsel and Greene was relieved. There is no evidence in the record that Zapien ever changed his mind on discharging Greene, since his original request on June 21, 2013.

*Motion for New Trial*

On February 21, 2014, Zapien, now represented by Whitten, filed a motion for new trial pursuant to section 1181. The motion alleged four grounds for granting a new trial. We set out the basic points of each.

First, Zapien argued he received ineffective assistance of counsel because Greene failed to file a motion to discharge counsel as directed. Zapien also alleged Greene was ineffective because he failed to challenge the photo lineup that was the basis for Zapien's identification and failed to challenge subsequent identifications during cross-examination of Fierros, Arreola, and Detective Guerrero.

Second, Zapien alleged he was denied his right to counsel of his choice because his request to discharge his retained attorney was timely made before trial and wrongfully denied.

Third, Zapien alleged that, even if the request to discharge was untimely, the court abused its discretion when it did not ask Zapien to explain his request, and it should have granted the request to discharge because it was not made in bad faith and it was not an attempt to delay trial.

And fourth, Zapien alleged the trial court's denial of Greene's request to withdraw due to an actual conflict of interest was improper.

The motion included a declaration from Zapien stating he retained Greene because Greene assured him he would attempt to "either suppress or exclude the photo line-up identifications, and … file any necessary motions to accomplish this …." When Zapien later found no such motions forthcoming, he decided he no longer wished to be

9.

represented by Greene, and told the court so at the next readiness hearing on June 21, 2013. Greene was then told by the trial court to file a motion to discharge. Zapien's declaration concluded by stating "I believe the court's denial of my request to discharge Mr. Greene prevented me from being effectively represented, and prevented me from getting a fair trial."

The People opposed the motion, arguing Zapien did not receive ineffective assistance of counsel because the photographic lineup was not unduly suggestive, negating any need on Greene's part to further question the identifications at trial. The People argued further that Zapien's request that the trial court vacate the earlier ruling on Zapien's motion to discharge counsel was improper, as it would be one trial judge overruling an order of another trial judge. The People opined such a request was more appropriately made in an appeal to the appellate court.

*Hearing on Motion for New Trial*

The hearing on the new trial motion was held March 7, 2014. Prior to hearing argument on the motion, the trial court stated Zapien's claim of ineffective assistance of counsel raised three issues: that Greene should have challenged the photo lineup either pretrial or at trial; that Greene should have cross-examined on issues related to the photo lineup; and that Greene should have filed a motion to discharge counsel on Zapien's behalf. The trial court noted that Zapien also challenged the trial court's earlier disposition of the motion to withdraw. The trial court did not directly address Zapien's original request to discharge his retained attorney. However, Zapien's counsel argued that Zapien did make a motion to discharge his retained counsel, that he had a right to discharge retained counsel and denying him that right resulted in an "unfair trial," requiring per se reversal.

The balance of the argument and comments by the court focused on the ineffectiveness of counsel in failing to address the photo lineup issues, failing to file a motion to discharge and the denial of the motion to withdraw. Finally, when Zapien's

10.

counsel was given another chance to respond, he put his client on the stand. Zapien testified he asked Greene to file a motion to suppress the photo lineup, but when he said no, Zapien asked the trial court that he be able to discharge Greene. Zapien was under the impression the trial court denied his motion to discharge Greene, so "I didn't bother with it again."

Following argument, the trial court took the matter under submission. On March 12, 2014, Zapien filed a supplemental brief in support of the motion, arguing he had an absolute right to discharge retained counsel, denial of this right was prejudicial per se, "and the fact that this right was denied because of ineffective assistance of counsel rather than court error is inconsequential."

The People did not respond to this issue in its reply to the supplemental brief.

On March 28, 2014, the trial court stated it was tentatively inclined to deny the motion on grounds of ineffective assistance of counsel. According to the trial court, there was no record before the court that counsel's decisions not to contest the photographic lineup was anything other than a "tactical decision[] by the trial counsel." The trial court also stated that, having been the trial judge in the case, it could find no reasonable probability that, but for counsel's actions regarding the photo lineup, Zapien would have received a more favorable determination.

The trial court stated it was "a little more troubled" by the basis for the motion regarding Zapien's pretrial effort to discharge retained counsel and counsel's effort to withdraw from the case. The trial court believed Zapien's efforts to contest the ruling was "ostensibly a collateral attack upon the decision of another judge of the Court" and was a matter for the Court of Appeal. The trial court also stated the issue "[f]or me as the trial judge … in essence turns into the same issue of whether or not the counsel that was present performed competently or effectively," and it tentatively found against Zapien on that issue.

11.

Zapien's counsel again argued Zapien specifically requested to discharge Greene, that Greene was instructed to file a motion to discharge, but filed a motion to withdraw instead. As argued by Zapien's counsel, when Greene's motion to withdraw was denied, Greene should have brought a motion to discharge, and failed to do so. Zapien's counsel argued Zapien was never made aware of the fact that his requested motion to discharge had never been heard, and so was never informed that he needed to reraise the issue. Zapien's counsel argued this was "clear ineffective assistance of counsel." Zapien's counsel argued Zapien wished to discharge Greene for a "specific reason," that being that he failed to file a motion to exclude or suppress the photo lineup.

Zapien's counsel, noting the trial court's reluctance to collaterally attack a decision of another judge, instead framed the argument of Zapien's right to discharge counsel as one of ineffective assistance of counsel. As argued by counsel:

> " … I understand that this is a little unusual in the fact that that came to ineffective assistance of [c]ounsel, but I would argue that it makes no difference. It's the same result. And the only difference is you don't have to rule on something another judge has ruled on because in this case it's ineffective assistance of counsel, which would be a determination that would be made by the trial judge."

The People again argued Zapien was asking the trial court to make a decision based on speculation, as Greene was not called to testify. The People argued the trial court therefore had no evidence of what occurred outside the courtroom in pretrial proceedings in order to grant Zapien's new trial motion. The People agreed with the trial court's thinking that this was a "collateral attack on Judge Bush's decision, because when Mr. Greene did a motion to withdraw, Judge Bush heard his reasons and found there wasn't good cause for him to withdraw."

Zapien's counsel was given another opportunity to respond and argued Zapien's new trial motion should be granted because he had "an absolute right to make a timely

12.

discharge of counsel, and that was never heard," "because of the ineffective assistance of his counsel."

The trial court denied the motion, stating:

"[M]y determination of the matter is that the asserted ineffective assistance of counsel at trial, I have determined on the second prong of the test as to whether or not it is reasonably probable that a determination would be more favorable to the defendant if those things had taken place. I've stated I don't think that the motion meets the second prong at a minimum. [¶] As to the issue of the pretrial request or motion to discharge and the motion to withdraw, that does require me to review the record, the trial record, the transcript that was created, and consider that as part of my determination, and that was a proceeding that was undertaken and determined by another judge. I understand the arguments you're making, Mr. Whitten, and seriously considered them. Whether that evolves into ineffective assistance of counsel that I can determine on a motion for a new trial, I have decided that it does not. The appellate court may disagree with me, may think that it does subsume into a motion for a new trial before the trial judge, but I have determined it does not for the reason it requires me to review the judgment of another judge of this court, which I think is within the province of the Court of Appeal."

Essentially, the trial court concluded it could not review the ruling of another judge on the motion to withdraw, either directly or through an ineffective assistance of counsel claim. The trial court did not address Zapien's direct oral request to discharge his retained counsel made at the trial readiness hearing.

*Motion to Discharge*

One of Zapien's contentions on appeal, which he addresses within the context of the denial of his new trial motion, is that he was prejudicially denied his June 21, 2013, oral pretrial request to discharge retained counsel. We agree.

A criminal defendant is entitled to assistance of counsel at all critical stages of the proceeding. (U.S. Const., 6th Amend.; Cal. Const., art I, § 15; Pen. Code, §§ 686, 859 & 987; *Gideon v. Wainwright* (1963) 372 U.S. 335, 344-345.) "The right of a criminal defendant to counsel and to present a defense are among the most sacred and sensitive of

our constitutional rights.  (*Magee v. Superior Court* (1973) 8 Cal.3d 949, 954.)"  (*People v. Ortiz* (1990) 51 Cal.3d 975, 982 (*Ortiz*).)  An element of a defendant's Sixth Amendment right to counsel is the right of the defendant to choose his or her own retained counsel.  (*United States v. Gonzalez-Lopez* (2006) 548 U.S. 140, 148-152 [Erroneous deprivation of the right to counsel of choice is "structural error" and reversible per se]; *People v. Leonard* (2000) 78 Cal.App.4th 776, 784.)

While an indigent criminal defendant may discharge or substitute appointed counsel, the right to do so is not absolute and is a matter of judicial discretion unless there is a sufficient showing that the defendant's right to the assistance of counsel would be substantially impaired if his request was denied.  (*People v. Carr* (1972) 8 Cal.3d 287, 299; *People v. Clark* (1992) 3 Cal.4th 41, 104, overruled on other grounds in *People v. Pearson* (2013) 56 Cal.4th 393, 462.)  The trial court also retains discretion to deny such a request if it is untimely.  (*People v. Whitt* (1990) 51 Cal.3d 620, 659; *People v. Jackson* (1981) 121 Cal.App.3d 862, 872.)

But in contrast to situations involving appointed counsel, a criminal defendant has the right to discharge his or her retained attorney with or without cause.  (*Ortiz, supra,* 51 Cal.3d at pp. 983, 987.)  While an indigent defendant may discharge appointed counsel only if that lawyer is rendering inadequate representation or there exists an irreconcilable conflict between counsel and client (see *People v. Marsden* (1970) 2 Cal.3d 118, 123), an indigent or nonindigent criminal defendant may discharge retained counsel for any reason.  (*Ortiz, supra,* at p. 984.)

When a defendant makes a request to the court (or at least a clear indication) to discharge or substitute his or her appointed counsel, the court has a duty to conduct a *Marsden* hearing to determine if the lawyer is rendering inadequate representation or there exists an irreconcilable conflict between counsel and client. The defendant is not required to make a formal motion.  (*People v. Sanchez* (2011) 53 Cal.4th 80, 90.)  Because the right to retained counsel of one's choosing is protected by the Sixth

14.

Amendment, it follows that a defendant seeking to discharge his or her retained counsel possesses these same procedural rights and need not bring a formal motion to discharge retained counsel, assuming that defendant has made clear to the court that he or she wishes to discharge that retained counsel.

The right to discharge retained counsel is not, however, absolute. The trial court may deny a request to discharge retained counsel "if discharge will result in 'significant prejudice' to the defendant [citation], or if it is not timely, i.e., if it will result in 'disruption of the orderly processes of justice' [citations]." (*Ortiz, supra,* 51 Cal.3d at p. 983.) "[T]he 'fair opportunity' to secure counsel of choice provided by the Sixth Amendment 'is necessarily [limited by] the countervailing state interest against which the sixth amendment right provides explicit protection: the interest in proceeding with prosecutions on an orderly and expeditious basis, taking into account the practical difficulties of "assembling the witnesses, lawyers, and jurors at the same place at the same time.""" (*Id.* at pp. 983-984, quoting *Sampley v. Attorney General of North Carolina* (4th Cir. 1986) 786 F.2d 610, 613.)

Because the right to discharge retained counsel is broader than the right to discharge appointed counsel, and no cause for discharge need be shown, a *Marsden*-type hearing at which the court determines whether counsel is providing adequate representation or is tangled in irreconcilable differences with the defendant is an "'inappropriate vehicle in which to consider [the defendant's] complaints against his retained counsel.'" (*People v. Hernandez* (2006) 139 Cal.App.4th 101, 108, quoting *People v. Lara* (2001) 86 Cal.App.4th 139, 155 (*Lara*).) Instead, under the applicable test for retained counsel, the court should "balance the defendant's interest in new counsel against the disruption, if any, flowing from the substitution." (*Lara, supra,* at p. 153.) In so doing, the court "must exercise its discretion reasonably: 'a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render

the right to defend with counsel an empty formality.'" (*Ortiz, supra,* 51 Cal.3d at p. 984, quoting *People v. Crovedi* (1966) 65 Cal.2d 199, 207.)

Here, Zapien sought to discharge Greene on the day of the readiness hearing. His request to do so was unequivocal. As discussed above, no formal motion need be brought and cause for the discharge need not be shown, but the trial court retains discretion to deny such a motion if the discharge (1) would cause "'significant prejudice'" to the defendant, e.g., by forcing him to trial without representation, or (2) was untimely and would "result in … 'disruption of the orderly process of justice unreasonable under the circumstances of the particular case.'" (*Ortiz, supra,* 51 Cal.3d at p. 982.) If such factors are not implicated in defendant's motion to discharge his retained counsel, the trial court's denial of defendant's motion requires automatic reversal of the conviction. (*Id.* at p. 988.)

However, the trial court at the readiness hearing never addressed the two *Ortiz* factors outlined above. It never inquired of Zapien any reason for his request, whether Zapien wished to retain other counsel or have counsel appointed, or whether a continuance was required. No inquiry was made of the prosecution on the timeliness of the request. Other than set the matter over for a formal motion to discharge, it never addressed Zapien's request to discharge Greene. This was error on the part of the trial court at the trial readiness hearing. The question is whether the error requires reversal, which we hold is mandated.

Our reasoning in *Lara* is helpful. There, on the first day of trial, the defendant expressed dissatisfaction with his privately retained counsel, including a complaint that counsel was unprepared. The trial court treated the issue as a *Marsden* motion, which it denied. We found the trial court improperly treated the defendant's request to discharge privately retained counsel as a *Marsden* motion. (*Lara, supra,* 86 Cal.App.4th at p. 155.) We held that, while a defendant moving for substitution of appointed counsel must show good cause (*id.* at p. 151), a defendant may discharge retained counsel at any time, with

16.

or without cause, as long as he or she has not been unjustifiably dilatory or arbitrarily desires to substitute counsel at the time of trial. (*Id.* at pp. 152-153.) The defendant's day-of-trial implied request to discharge retained counsel was timely because (1) there was no evidence to suggest the defendant's request was made in an effort to delay the proceedings; and (2) the attorney had not consulted with the defendant for months and thus the defendant was "unaware of the nature of [defense counsel's] preparation until the moment the trial was finally set to begin." (*Id.* at pp. 162-163.) In addition, "[t]he trial court considered the supposed *Marsden* motion on its merits and did not make any findings as to the motion's being untimely. We thus lack[ed] any factual findings that [the defendant's] motion was necessarily untimely or that it would have disrupted the orderly process of justice." (*Id.* at p. 163.) We found the trial court did not properly exercise its discretion in the treatment of the defendant's motion and reversed. (*Id.* at p. 166.)

"'"'To exercise the power of judicial discretion all the material facts in evidence must be both known and considered, together also with the legal principles essential to an informed, intelligent and just decision." [Fn. Omitted.]' [Citation.]" (*In re Marriage of Martin* (1991) 229 Cal.App.3d 1196, 1200.)

Zapien's request to discharge his retained attorney was made 10 days before trial was scheduled to begin. As in *Lara,* we are left with an incomplete record upon which to conclude that such a motion was necessarily untimely. And, as in *Lara*, there is no indication in the record that Zapien made the request for the purpose of improperly delaying the proceedings. We hold the trial court did not properly exercise its discretion when it failed to address Zapien's request to discharge his attorney.

> "Reversal is automatic … when a defendant has been deprived of his right to defend with counsel of his choice. (*People v. Gzikowski* [(1982)] 32 Cal.3d 580, 589.) The right to counsel of choice, including the right to discharge retained counsel, furthers the dual goals of due process: (1) ensuring the reliability of the guilt-determining process by reducing to a

17.

minimum the possibility that an innocent person will be punished; and (2) protecting the ideal of human individuality by affirming the state's duty to refrain from unreasonable interference with a defendant's desire to defend himself in whatever manner he deems best. [Citations.] The right to counsel of choice is one of the constitutional rights most basic to a fair trial. Accordingly, it is clear that a criminal defendant need not demonstrate prejudice resulting from a violation of that right in order to have his conviction reversed. As stated in the controlling case of *Chapman v. California* (1967) 386 U.S. 18, 23: 'there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error ....' The right here is such a right." (*Ortiz*, *supra,* 51 Cal.3d at p. 988.)

At the trial readiness hearing, the court was obligated to address Zapien's motion to discharge his retained attorney, including the *Ortiz* factors, in assessing whether Zapien's request to discharge his retained attorney would cause him prejudice or was untimely. Because the court did not do so, Zapien's request to discharge his retained attorney must be considered timely and the court's error mandates reversal of the later trial court denial of his motion for a new trial. For such reason, we find it unnecessary to address Zapien's remaining issues.

## DISPOSITION

The judgment is reversed and remanded for retrial.

_____
FRANSON, J.

WE CONCUR:


_____
KANE, Acting P.J.


_____
POOCHIGIAN, J.