Filed 9/1/16  P. v. Chan CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LEMUEL CHAN,<br><br>    Defendant and Appellant. | B262909<br><br>(Los Angeles County<br>Super. Ct. No. YA087106) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven R. Van Sicklen, Judge.  Affirmed.

Doris M. LeRoy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Russell A. Lehman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Lemuel Chan of sexual penetration by a foreign object (Pen. Code, § 289, subd. (d); count 1), sexual penetration on a child 10 years of age or younger (§ 288.7, subd. (b); count 5), oral copulation with a child 10 years old or younger (§ 288.7, subd. (b); count 4), and lewd act on a child (§ 288, subd. (a); counts 2, 3, and 6).[1] In the lewd act counts, the jury found that the crimes were committed against more than one victim (§ 667.61, subds. (b) and (e)). The trial court sentenced defendant to state prison for a term of 3 years on count 1, and consecutive terms of 15 years to life on counts 2, 3, and 6, with concurrent terms on the remaining counts. Defendant appeals from the judgment of conviction, contending that the trial court erred by denying his pretrial request to substitute counsel. We disagree, and affirm the judgment.

## BACKGROUND

*Trial Evidence*

Because the evidence supporting the charges is not relevant to the sole issue raised on appeal, we only briefly summarize it. The victims of defendant's crimes were his daughters, E. (counts 1, 2, and 3) and D. (counts 4, 5, and 6).

On the night of April 4, 2013, while sleeping in the bedroom she shared with her parents and siblings, E. (then under 14 years old) awoke to find defendant digitally penetrating her. When E.'s mother got home from work, E. sat up in bed and began crying. E.'s mother said words to the effect of, "Not again," and called the police. Defendant told the first responding Sheriff's Deputy, "I touched my daughter," and was arrested.

Defendant had committed a similar act against E. about a year earlier, when he rubbed her vagina. After that occasion, E. tried to call 911, but her grandfather

---

[1] Further unspecified statutory references are to the Penal Code.

2

grabbed the phone. She then wrote a note saying, "He's doing it again," and slipped it under the bathroom door to her mother. In the note, she was referring to a period when she was 8 to 10 years old, during which defendant touched her in the same manner about two times a month. E.'s mother learned of that abuse, and kicked defendant out of the house, but he eventually returned.

After defendant was arrested on April 5, 2013 for the crimes against E., D. (then 10 years old) revealed that she, too, had been molested the night before while her siblings were asleep. Defendant told her to turn off the television and come over to him. When she did, he digitally penetrated her vagina and placed his penis in her mouth, after which something slimy came out. She spit it out, and at defendant's direction, washed her face.

E. and D. described these incidents to Los Angeles Sheriff's Deputies, and when questioned by Detective Jason Marx in a tape recorded interview, defendant admitted committing the crimes. At trial, E. and D. recanted, and their prior statements were admitted as prior inconsistent statements.

A DNA sample from defendant's penis tested positive for saliva, with D.'s DNA profile as a "possible minor contributor," meaning statistically a chance of one in 752 billion people that she was not the contributor. D.'s profile also matched a DNA sample from defendant's scrotum, with a probability of one in 85 trillion that she was not a contributor.

## DISCUSSION

Defendant contends that the trial court violated his Sixth Amendment right to counsel by denying his request to substitute private counsel. We disagree.

*Procedural Background*

From his preliminary hearing on September 19, 2013, to the pretrial conference on October 28, 2013, defendant was represented by Deputy Public Defender Richard Ewell. At the pretrial conference, the court relieved Ewell and granted defendant's request to allow retained counsel Leslie Reyes to substitute in as defendant's attorney. The original trial date of December 3, 2013 was continued to January 23, 2014. Thereafter, the trial date was continued four additional times to May 8, 2014 as day 10 of 10.

On April 29, 2014, nine days before the trial date, attorney Reyes moved to be relieved. The court granted the motion, appointed Deputy Public Defender Ewell to represent defendant, and continued the trial dated to June 30, 2014, as day 10 of 10.

On May 28, 2014, Ewell advised the court that defendant wanted to substitute private attorney Arlene Binder, who was present, as his attorney. The court asked whether that would cause a delay in the trial. Binder confirmed that it would, and asked the court to reset trial for July 14 as day 0 of 30, with trial "absolutely to go on the 30th day after that." The court noted that the information had been filed in October of the previous year and that the last day for trial was June 30. Binder stated it was her understanding that some of the delay had been due to a DNA report that had not been prepared and produced by a laboratory retained by prior counsel Reyes at court expense.

Ewell stated that the laboratory was requesting more money to do testing and prepare a report. The court expressed concern about the amount of court funds already paid, but ultimately signed an order for additional funds.

When attorney Binder began to speak on the subject, the court noted that Ewell was counsel of record, and that defendant previously had private counsel. The court asked, "He's hiring private counsel again? . . . Why are we paying this

4

type of money for experts if he's hired private counsel? My understanding was he couldn't afford counsel." Binder informed the court that defendant was indigent, but a family member was paying her on defendant's behalf.

The court stated, "Okay. First of all, it will cause a delay which I'm not inclined to suffer in this case again. Second, he has – he has Mr. Ewell since – for about a month." The prosecutor and Ewell recounted that Ewell had represented defendant through the preliminary hearing, then attorney Reyes substituted in and represented appellant for some months before Reyes was relieved, at which time Ewell was reappointed to represent appellant.

Turning back to the question concerning the DNA report, the court indicated Ewell would need to communicate with Reyes to determine what payments had been made to the laboratory preparing the report and why the report was still outstanding.

When the court returned the request to substitute counsel, the court stated: "So, at this point – and I – just to switch gears. I don't feel comfortable with substituting Mr. Ewell out with a continuance. I would rather move forward with what we have. It doesn't make sense to me that we are paying any money if this family has enough money to hire counsel again. Otherwise everybody would come in here and say appoint all the experts we want. Our family is paying. I'm not paying myself. I don't feel comfortable with that either. . . . In any event I'm not going to allow the substitution – not for a continuance."

Then, following an unreported conference at the bench, the court stated, "All right. So, the request for counsel to substitute in is denied. That's based upon the delay and the public funds already expended, substantial public funds." The court set a further pretrial date for June 4, but left the last day for trial as June 30, 2014, intact.

On June 4, during discussions about the possibility of a plea agreement, defendant said, "Well, I would want private counsel. You denied that." In response, the court explained, "You can bring in private counsel, somebody that will be ready to go to trial. You are welcome to do that." After discussions for a negotiated settlement were unsuccessful, the court set trial to commence on June 26, 2014, and ordered a panel of prospective jurors for that date. The prosecutor forewarned that he had another trial scheduled for June 18, as day 0 of 10.

On June 26, 2014, another deputy district attorney stood in for the prosecutor because he was in trial. At the parties' request, the court reset trial for July 15, as day 0 of 10. When the court asked defendant if he waived time to that date, defendant replied, " I want to ask if I can relieve to find my private counsel to represent me." The court stated, "The case was filed October of last year. You're welcome to any counsel you want as long as that counsel is ready to try the case on the date indicated." When defendant said, "I'll make a phone call," the court explained, "Okay. So, that counsel needs to come in sooner [rather] than later and not wait until ten days before and try to make the argument that they need more time to prepare. It will not work. You could have done this a long time ago."

On July 15, 2014, the court indicated that it was then in trial. The prosecutor advised that the investigating officer would be off during the first two weeks of August, that the prosecutor himself would be off the third week of August, and that after that the victims' school schedule would be impacted. The court offered to find a different court to try the case.

On July 24, 2014, the matter was transferred to a different judge and trial commenced that day. Deputy Public Defender Ewell continued to represent appellant throughout the trial and sentencing.

6

*Analysis*

Under the Sixth Amendment, a criminal defendant has a right to retained counsel of his or her choice. (*United States v. Gonzalez-Lopez* (2006) 548 U.S. 140, 144.) However, that right is not absolute. A trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness, [citation], and against the demands of its calendar, [citation]." (*Id*. at p. 152.) "The trial court, in its discretion, may deny such a motion if discharge will result in 'significant prejudice' to the defendant [citation], or if it is not timely, i.e., if it will result in 'disruption of the orderly processes of justice' [citations]." (*People v. Ortiz* (1990) 51 Cal.3d 975, 983; see *Ungar v. Sarafite* (1964) 376 U.S. 575, 589 [11 L.Ed.2d 921] [decision to grant or deny a continuance to retain different counsel is discretionary].)

Given the state's countervailing interest in judicial efficiency, a trial court generally enjoys discretion in granting or denying a continuance to permit a defendant to be represented by retained counsel. (*People v. Courts* (1985) 37 Cal.3d 784, 790-791 (*Courts*).) In assessing whether the trial court's denial of a continuance amounts to an abuse of discretion, the reviewing court looks to the circumstances of each case, "'particularly in the reasons presented to the trial judge at the time the request [was] denied.' [Citations.]" (*People v. Mungia* (2008) 44 Cal.4th 1101, 1118.) Where the defendant requests a continuance close to the date of trial, the lateness of the request may be a significant factor justifying denial absent compelling circumstances to the contrary. (*Courts, supra*, 37 Cal.3d at p. 792, fn. 4.) Thus, a continuance may be denied where the defendant "is 'unjustifiably dilatory' in obtaining counsel" or "'arbitrarily chooses to substitute counsel at the time of the trial.' [Citation.]" (*Id*. at pp. 790-791.)

Here, under the circumstances faced by the court at the time attorney Binder requested to substitute in, the trial court did not abuse its discretion in denying the

substitution, because the delay it would cause would disrupt the orderly handling of the case.  On October 28, 2013, the court granted defendant's first request to substitute retained counsel, attorney Reyes.  The trial date was then continued five times, with the trial ultimately set for May 8, 2014 as day 10 of 10.  However, on April 29, 2014, nine days before the trial date, attorney Reyes's moved to be relieved.  The court granted the motion, appointed Deputy Public Defender Ewell to represent defendant, and continued the trial dated to June 30, 2014, as day 10 of 10.  However, about one month later, on May 28, 2014, with no explanation other than that a family member was now willing to pay, and with no indication that Deputy Public Defender Ewell was not competently representing him, defendant sought to substitute in attorney Binder, who represented that she would need a continuance to July 14 as day 0 of 30, with trial set to start 30 days thereafter – in substance, a continuance of the June 30 trial date for approximately six weeks.  But as the court noted, the case had already been continued multiple times.  Further, it was apparent that Deputy Public Defender Ewell was prepared to go to trial as soon as he obtained the defense DNA analysis, for which the court had authorized the additional funds he had requested.  Also, the court was not required to accept at face value attorney Binder's claim that the trial would "absolutely" start on the 30th day after July 14 – she was new to the case, and was not in a position to guarantee a particular trial date.  The case involved young victims (E. was 16 years old at the time of trial, D. was 10) and sensitive issues of sexual abuse in the context of a dysfunctional family dynamic.  It was not a simple, straightforward case. (Cf. *People v. Munoz* (2006) 138 Cal.App.4th 860, 870-871.)  Moreover, the court could reasonably assume that Deputy Public Defender Ewell would be ready for trial before that.

Thus, on balance, the trial court did not abuse its discretion in denying substitution on the ground that a continuance would inordinately delay the trial.

Defendant contends that the court erred, because the court relied on its concern about the public funds being expended for the defense DNA analysis at the same time defendant was attempting to substitute retained counsel. However, the court made clear that while it was concerned about that issue, it also would not grant substitution if a continuance of the trial was required. Thus, even if the court erred in considering the public funding of ancillary defense services, that consideration had no effect on the ultimate ruling.

Finally, to the extent that unforeseen circumstances delayed the trial to July 24, 2014, that consideration does not demonstrate that the court abused its discretion. The court's ruling must be examined as of the time it was made, not based on facts apparent only in hindsight.

## DISPOSTION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, Acting P.J.

We concur:

MANELLA, J.                COLLINS, J.

9