Filed 12/16/20  P. v. Rojas-Cervantes CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JUAN CARLOS ROJAS-CERVANTES,<br><br>    Defendant and Appellant. | H047504<br>(Monterey County<br> Super. Ct. No. 18CR010919) |

## I.  INTRODUCTION

Defendant Juan Carlos Rojas-Cervantes pleaded no contest to kidnapping a child under the age of 14 (Pen. Code, §§ 207, subd. (a), 208, subd. (b)),[1] sodomy with a child under the age of 14 and more than 10 years younger than defendant (§ 286, subd. (c)(1)), and oral copulation with a child under the age of 14 and more than 10 years younger than defendant (former § 288a, subd. (c)(1)).  The trial court sentenced defendant to 15 years in prison.

On appeal, defendant contends the trial court erred by denying his motion to discharge his retained counsel, which he made after the date originally set for sentencing. For reasons that we will explain, we will affirm the judgment.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  *The Offenses[2]*

In 2018, the 13-year-old victim reported to the police that she had been forcibly taken by defendant, who was 37 years old.  Defendant took her to a motel, where they orally copulated each other.  Defendant physically restrained the victim and penetrated her vagina and anus with his penis and fingers.  The victim unsuccessfully tried to push defendant away and yelled at him to stop.  After they left the motel, the victim was able to escape.

In a subsequent interview, the victim reported that she had met defendant on a "messaging app," and that defendant had stated he was 13 years old.  After communicating for two days, they agreed to meet.  When defendant arrived at the agreed upon location, he "snatched" the victim and took her to a motel.  Defendant told the victim "there would be 'consequences' " if she did not comply, and the victim believed she would be killed.

The police obtained information from the motel which led to defendant's arrest.  After waiving his *Miranda*[3] rights, defendant initially denied going to the motel or engaging in sexual activity with the victim.  He eventually admitted being at the motel, that they orally copulated each other, and that he digitally penetrated the victim's anus and vagina.  Defendant claimed that he had posted online that he was 27 or 28 years old, and that he did not know the victim was only 13 years old even after meeting her in person.

### B.  *The Charges and Pleas*

On November 19, 2018, defendant was charged by complaint with 13 counts relating to kidnapping and sex crimes against the child.

---

[2] As defendant was convicted by the plea, the summary of his offenses is taken from the probation report, which was based on a police report.

[3] *Miranda v. Arizona* (1966) 384 U.S. 436.

On May 28, 2019, on motion of the prosecutor, the complaint was amended to add two counts: sodomy with a child under the age of 14 and more than 10 years younger than defendant (§ 286, subd. (c)(1); count 14) and oral copulation with a minor under the age of 14 and more than 10 years younger than defendant (former § 288a, subd. (c)(1); count 15). Defendant pleaded no contest to the newly added counts (counts 14 & 15) and to count 2, kidnapping a child under the age of 14 (§§ 207, subd. (a), 208, subd. (b)). Defendant entered his pleas with the understanding that he would be sentenced to 15 years in prison, a protective order would be issued for the victim, and defendant would waive his right to appeal.[4] Defendant also agreed in writing that he would not ask the court to withdraw his plea for any reason after it was entered.

## C. *Motion to Discharge Retained Counsel and Sentencing*

At the May 28, 2019 hearing in which defendant entered his no contest pleas, the trial court scheduled the sentencing hearing for July 25, 2019. According to the probation report dated July 18, 2019, the victim and her family did not plan to attend the sentencing hearing.

On July 25, 2019, the date set for sentencing, the parties appeared in court. Defendant's retained counsel apparently informed the prosecutor that defendant wanted to fire counsel and withdraw his no contest pleas. The record reflects that defendant had been represented by retained counsel since arraignment on November 20, 2018. The trial

---

[4] Defendant signed two separate documents regarding his waiver of rights and no contest pleas. In one document, he broadly agreed to waive all rights to appeal, including his right to appeal from the conviction, sentence, and judgment. In a second document, defendant similarly agreed to waive all rights to appeal, including from the conviction and judgment. However, the second document also included a "[l]imited [w]aiver," which provided that defendant only waived the "rights to appeal . . . any order issued by this court made *before* the date" he entered his no contest pleas. Neither party addresses whether the written waivers conflict or whether the instant appeal is barred by one or more of the appellate waivers. We therefore do not decide whether or to what extent the waivers apply to this appeal.

3

court continued the sentencing hearing to October 8, 2019, and apparently requested briefing on the issue of defendant discharging retained counsel.

On October 1, 2019, the prosecutor filed written opposition to defendant's anticipated motion to substitute counsel. The prosecutor contended that defendant failed to explain why he wanted new counsel and why he had delayed making the request until sentencing. The prosecutor also argued that defendant had not identified new counsel "and thus an indefinite continuance would be necessary." The prosecutor contended that without adequate justification from defendant, permitting him to discharge his retained counsel at that stage would disrupt the orderly processes of justice.

On October 3, 2019, defendant filed a motion to discharge his retained counsel. Defendant contended that he would not be significantly prejudiced if his counsel were discharged because "trial . . . ha[d] yet to be scheduled" and he "ha[d] time to decide whether he wishes to retain another attorney." He also argued that discharging retained counsel would "allow him to seek different representation in anticipation of trial." Defendant contended that discharging counsel would not disrupt the orderly processes of justice because "[t]rial in this matter ha[d] not been scheduled" and less than one year had elapsed since his arraignment.

On October 8, 2019, the date of the continued sentencing hearing, the trial court heard argument regarding defendant's motion to discharge his retained counsel. Defendant's trial counsel reiterated the arguments in the motion papers and also contended that, contrary to the prosecutor's contention, defendant was not required to identify alternative counsel at that point. Trial counsel further indicated that defendant "no longer trusts [him]," and that defendant believed there was "some additional evidence that his attorney . . . was not previously aware of." Trial counsel stated that defendant wanted him discharged and a public defender appointed, and that defendant did not want to represent himself.

4

Defendant's trial counsel also objected to an unpublished opinion that was cited in the prosecutor's written opposition. The trial court indicated that it had not taken the unpublished opinion into consideration.

The prosecutor contended that defendant's May 28th plea form stated that he was waiving his rights to withdraw his plea, and that he had had time to discuss all matters, sentencing, and possible defenses with his attorney. However, on the original sentencing date in July, he wanted to fire his attorney. According to the prosecutor, "[t]he only possible reason there could be post plea would be to delay the sentencing." The prosecutor argued that "[t]his is a statutory priority case because of the age of the victim and the charges," and that it was unreasonable "[t]o make a 13-year-old girl continue to wait for closure in this case." The prosecutor contended that defendant's motion was untimely, and that it appeared to be "merely tactical to avoid or put off sentencing." The prosecutor argued that defendant did not file any motions indicating that he wanted to withdraw his plea. The prosecutor contended, "There's nothing other than give me more time, which is certainly a delay tactic."

Defendant's trial counsel observed that if defendant intended to bring a motion to withdraw his plea, defendant would be making complaints about counsel. Counsel indicated that he "ha[d] heard that there might be some issues like that," but counsel "would not be able to fully brief" those issues because counsel was "the one [defendant was] pointing the finger at." Counsel contended that defendant could have a public defender appointed "just to do sentencing, for all that I know, and one continuance for that purpose certainly would not disrupt the orderly process of justice." Counsel contended that defendant had "an absolute right to counsel of his choice, and he's become extremely disillusioned with" current counsel.

The trial court denied defendant's request to discharge his retained counsel. The court explained that the issue was whether discharging counsel would cause significant prejudice to defendant or would result in a disruption of the orderly processes of justice.

5

The court observed that if new counsel came into the case and, "hypothetically speaking," defendant made a request to withdraw his plea, the case might not proceed to sentencing at that point. The court stated, "New counsel has to step in, new counsel has to be provided with all of the discovery that's necessary to be able to adequately understand and prepare for the defense of this case." The court indicated that the case involved a victim who was a minor, and that the delay would "put[] us beyond one year" since the case was filed. The court further observed that defendant had admitted conduct involving the victim as part of the plea bargain.

Defendant's trial counsel stated that "one of the issues would be whether or not [defendant's] plea was knowing, intelligent and voluntary," and "assuming that that's the course he's going to take, he would be indicating to the Court that his plea was not knowing, intelligent, or voluntary."

The trial court referred to the content of defendant's waiver of rights and plea form which set forth the charges he was pleading to, the potential maximum sentence for those charges, the specified term to which he was agreeing to, the factual basis for his pleas, his agreement that he would not ask the court to withdraw his plea, the immigration consequences of his plea, the acknowledgment that he had adequate time to discuss the case with his counsel, and that he understood the provisions of the agreement. The court recalled that, in going through the waiver of rights and plea form with defendant, there was no indication in defendant's responses and demeanor that he failed to understand what was taking place when his plea was taken. The court had found that defendant's plea was knowingly, voluntarily, and intelligently made. The court further observed that defendant's trial counsel was a 22-year, "very well-qualified and seasoned attorney" who was able to work out a negotiated agreement.

The trial court recognized that defendant had the constitutional right to secure counsel of his choice, but that the right was "not absolute." The court also observed that crime victims have rights under the California Constitution, and that "[v]ictims of crime

6

are entitled to finality in their criminal cases." The court stated that "[i]n a case involving the sexual assault of a minor child, the minor child is entitled to finality, especially when the record reflects that this gentleman has made a knowing, intelligent, and voluntary waiver of his rights. And we're now here at the point where we're ready to proceed with sentencing."

The trial court determined that, "[b]ased on the Court's balancing of the consideration of this [defendant's] right to have defense counsel of his choice, which, again, is not absolute; based on the Court's review of [*People v. Ortiz* (1990) 51 Cal.3d 975], and also the review of [*People v. Keshishian* (2008) 162 Cal.App.4th 425], and in consideration of the rights that the victim here, the minor victim, has, in particular in this case, with the finality of judgment and to be able to have closure and to proceed with sentencing, the motion to discharge retained private counsel is respectfully denied."

Defendant's trial counsel responded that the standard was whether there would be "significant prejudice to the defendant," not "significant prejudice to the alleged victim." Counsel stated that the "alleged victim . . . will not be prejudiced by the slight delay it would take for a public defender to be appointed to represent [defendant]." Counsel indicated that he had "all of the discovery with [him]" and that he could leave it with the court if the motion was granted. The court reiterated its denial of the motion.

After a break, the trial court proceeded with sentencing. Defendant was sentenced to 15 years in prison. He was also ordered to have no contact with the victim. The remaining counts and allegations were dismissed. At the conclusion of the sentencing hearing, defendant's trial counsel asked to be relieved, and the court granted the request.

### III. DISCUSSION

Defendant contends that the trial court erred by denying his motion to discharge his retained counsel, and that he was therefore deprived of his Sixth Amendment right to counsel.

**A.** *General Legal Principles Regarding the Right to Discharge Retained Counsel*

" 'The right to retained counsel of choice is—subject to certain limitations—guaranteed under the Sixth Amendment to the federal Constitution. [Citations.] In California, this right "reflects not only a defendant's choice of a particular attorney, but also his decision to discharge an attorney whom he hired but no longer wishes to retain." [Citations.]' [Citation.]" (*People v. O'Malley* (2016) 62 Cal.4th 944, 1004 (*O'Malley*).)

"Consistent with the Sixth Amendment right to counsel, a defendant may discharge *retained* counsel 'with or without cause.' [Citation.]" (*O'Malley*, *supra*, 62 Cal.4th at p. 1004.) In contrast, a defendant seeking to discharge appointed counsel must show that counsel " 'is providing inadequate representation [citations], or that he and the attorney are embroiled in irreconcilable conflict [citation].' [Citation.]" (*Ibid.*)

The "right to discharge . . . retained counsel, however, is not absolute. The trial court, in its discretion, may deny such a motion if [(1)] discharge will result in 'significant prejudice' to the defendant [citation], or if [(2)] it is not timely, i.e., if it will result in 'disruption of the orderly processes of justice' [citations]." (*People v. Ortiz* (1990) 51 Cal.3d 975, 983 (*Ortiz*); accord, *O'Malley*, *supra*, 62 Cal.4th at p. 1004.) This standard applies to a defendant's pretrial request to discharge retained counsel, as well as to a request made after conviction and prior to sentencing. (*People v. Munoz* (2006) 138 Cal.App.4th 860, 864-865, 869 (*Munoz*).)

"[T]he trial court retain[s] discretion to deny . . . a motion if the discharge would . . . cause ' "significant prejudice" ' to the defendant, e.g., by forcing him to trial without adequate representation." (*People v. Lara* (2001) 86 Cal.App.4th 139, 153 (*Lara*); see *People v. Rodriguez* (2014) 58 Cal.4th 587, 622-623 (*Rodriguez*) [a "trial court is not obligated to discharge retained counsel the instant a defendant states the intent to remove that attorney and even before the defendant decides on a replacement," thereby leaving the defendant unrepresented].)

8

In determining whether a motion to discharge retained counsel is not " 'timely, i.e., if it will result in "disruption of the orderly processes of justice" ' [citation], the trial court considers the totality of the circumstances [citations]. Although a defendant seeking to discharge . . . retained attorney is not *required* to demonstrate inadequate representation or an irreconcilable conflict, this does not mean that the trial court cannot properly consider the absence of such circumstances in deciding whether discharging counsel would result in disruption of the orderly processes of justice." (*People v. Maciel* (2013) 57 Cal.4th 482, 513 (*Maciel*).) For example, if the defendant raises concerns about retained counsel, the trial court may properly consider and discuss those concerns with the defendant. (*Ibid.*)

A trial court, however, "must not consider whether the defendant is indigent and will require appointment of counsel in ruling on [the defendant's] timely motion to discharge retained counsel. [Citation.]" (*Lara*, *supra*, 86 Cal.App.4th at p. 154.) There is no reason " 'to treat an indigent defendant any differently from a nonindigent defendant when [a defendant] moves to discharge . . . retained counsel. In light of the importance of the right to counsel of choice and the sensitive nature of the relationship between a criminal defendant and [the] lawyer, we must not allow a defendant's indigence to prevent [the defendant] from discharging in a timely manner the retained counsel [the defendant] no longer wishes to represent him [or her].' [Citation.]" (*Ibid.*)

In sum, "[a] court faced with a request to substitute retained counsel must balance the defendant's interest in new counsel against the disruption, if any, flowing from the substitution. [Citations.]" (*Lara*, *supra*, 86 Cal.App.4th at p. 153.) "[T]he 'fair opportunity' to secure counsel of choice provided by the Sixth Amendment 'is necessarily [limited by] the countervailing state interest against which the sixth amendment right provides explicit protection: the interest in proceeding with prosecutions on an orderly and expeditious basis, taking into account the practical difficulties of "assembling the witnesses, lawyers, and jurors at the same place at the

9

same time." ' The trial court, however, must exercise its discretion reasonably: 'a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.' [Citation.]" (*Ortiz*, *supra*, 51 Cal.3d at pp. 983-984.)

**B.** *The Standard of Review*

"We review a trial court's denial of a request to discharge retained counsel for an abuse of discretion. [Citation.] . . . The erroneous denial of a defendant's right to discharge retained counsel is presumptively prejudicial and automatically requires reversal. [Citation.]" (*People v. Lopez* (2018) 22 Cal.App.5th 40, 47.)

**C.** *Analysis*

Defendant contends that the trial court erred in denying his motion because discharging retained counsel would not have prejudiced defendant and his request to discharge was timely. Regarding timeliness, defendant argues that the case had been pending for less than a year, he had entered a plea and a sentence had been negotiated, and "[c]ontinuing the sentencing date for a short period of time would have done nothing to disrupt the orderly processes of justice." He further contends that there were no witnesses to be called, no jury panel was waiting, and the victim and her family had indicated that they did not intend to be present for sentencing. Defendant argues that "[t]he court's concerns regarding timeliness were based entirely on its perception that [defendant] was going to move to withdraw his plea, and furthermore, succeed in that motion." Defendant contends, however, that his "written motion to discharge counsel did not indicate that was the goal . . . , nor was that stated as anything more than a hypothetical possibility by either the court or counsel during the hearing." Defendant also argues that it was improper for the court to consider "the victim's right to have sentencing take place at a particular time" and "the fact that [defendant] understood the parameters of the plea agreement when he entered into it."

10

We determine that the trial court did not abuse its discretion in denying defendant's motion to discharge his retained counsel because the motion was untimely.

As an initial matter, we observe that defendant filed his written motion to discharge retained counsel on October 3, 2019, five days before the continued sentencing hearing. In the written motion, defendant indicated that he was trying "to decide *whether* he wishes to retain another attorney." (Italics added.) Because defendant admittedly "had not yet decided how to replace [counsel]," "[d]ischarging [counsel] then would have left [defendant] unrepresented. But [he] never indicated [he] wanted to be left unrepresented. A trial court is not obligated to discharge retained counsel the instant a defendant states the intent to remove that attorney and even before the defendant decides on a replacement." (*Rodriguez*, *supra*, 58 Cal.4th at pp. 622-623.)

At the hearing on the motion on October 8, 2019, defendant finally indicated that he wanted the trial court to appoint counsel for him. Regarding the basis for discharging retained counsel, defendant indicated that "he no longer trusts his attorney" and believed that "there's some additional evidence that his attorney . . . was not previously aware of."

Regarding the untimeliness of defendant's motion, we find *People v. Keshishian* (2008) 162 Cal.App.4th 425 (*Keshishian*) instructive. In *Keshishian*, the appellate court concluded that the defendant's "last-minute attempt to discharge counsel and delay the start of trial" was properly rejected. (*Id.* at p. 429.) Regarding the defendant's reason for discharging counsel, the appellate court observed that "[h]e stated only that he had 'lost confidence' in his attorneys. This request was made on the day set for trial after the case had been pending for two and a half years. An indefinite continuance would have been necessary, as [the defendant] had neither identified nor retained new counsel. Witnesses whose appearances had already been scheduled would have been further inconvenienced by an indefinite delay." (*Ibid.*) The appellate court reasoned that " ' "[t]he right to counsel cannot mean that a defendant may continually delay his day of judgment by discharging prior counsel," ' and the [trial] court is within its discretion to deny a last-

11

minute motion for continuance to secure new counsel. [Citations] That [the defendant] had inexplicably 'lost confidence' in his experienced and fully prepared counsel did not constitute good cause for granting the continuance requested, nor justify the disruption to the judicial process that would have ensued." (*Ibid.*)

Although the proceedings in *Keshishian* had been pending for a longer period before the motion to discharge counsel was made, and the immediate disruption would have been to the trial, rather than to sentencing as in this case, we find the appellate court's reasoning in *Keshishian* applicable to this case. Defendant first raised the issue of discharging his retained counsel on July 25, 2019, the date initially set for sentencing. After the issue was briefed, the matter was heard on October 8, 2019, with defendant indicating only that he had lost trust in his attorney and that there was purportedly some evidence that his attorney was not aware of. By this point, it had been more than four months since defendant had entered his no contest pleas and the sentencing hearing had already been postponed two and a half months. The record does not reflect that anything happened in the case between the time of defendant's no contest pleas and the filing of the motion that could explain defendant's delay in seeking to discharge his attorney, beyond the vague assertion at the hearing that there was "some additional evidence that [defendant's attorney] . . . was not previously aware of." By the time of defendant's motion, the case was set for sentencing and a discharge of defendant's counsel at this point would have been disruptive to the completion of already long-delayed sentencing proceedings. Indeed, defendant on appeal does not dispute that discharging counsel would have necessitated the continuance of sentencing for some period – at least "several weeks" according to defendant. However, " ' "[t]he right to counsel cannot mean that a defendant may continually delay his day of judgment by discharging prior counsel," ' and the [trial] court is within its discretion to deny a last-minute motion for continuance to secure new counsel. [Citations] That [the defendant] had inexplicably 'lost confidence' in his experienced and fully prepared counsel did not constitute good cause for granting

12

the continuance . . . , nor justify the disruption to the judicial process that would have ensued." (*Keshishian*, *supra*, 162 Cal.App.4th at p. 429.)

Defendant contends that the trial court improperly considered whether he understood his plea agreement when he entered into it. However, at the hearing on the motion to discharge counsel, defendant's trial counsel acknowledged the possibility of defendant withdrawing his plea, acknowledged that "one of the issues would be whether or not his plea was knowing, intelligent and voluntary," and acknowledged that counsel was "the one [who defendant was] pointing the finger at." Under these circumstances, "[a]lthough a defendant seeking to discharge his retained attorney is not *required* to demonstrate inadequate representation or an irreconcilable conflict, this does not mean that the trial court cannot properly consider the absence of such circumstances in deciding whether discharging counsel would result in disruption of the orderly processes of justice." (*Maciel*, *supra*, 57 Cal.4th at p. 513.) In this case, the trial court – who was the same judge who had earlier accepted defendant's no contest pleas – recalled that at the change of plea hearing, there was no indication based on defendant's responses or his demeanor that he failed to understand "what was taking place" or that he failed "to really truly grasp exactly what was happening when that plea was taken." The court stated that it had made "a finding that it was knowingly entered and voluntarily made, intelligently made." The court also observed that defendant's waiver of rights and plea form included an agreement by defendant that he would not ask the court to withdraw his plea. Given the issues raised by defendant's motion to discharge counsel, counsel's comments at the hearing regarding a possible plea withdrawal, and the implication concerning the adequacy of counsel's representation of defendant, we are not persuaded that the court's consideration of the voluntariness of defendant's plea was improper. (*See id.* at pp. 513-514 ["defendant raised numerous concerns about retained counsel in . . . the motion to discharge counsel, and the trial court did nothing improper in discussing those concerns with defendant at the hearing"].)

13

Defendant also contends that it was improper for the trial court to consider "the victim's right to have sentencing take place at a particular time." In particular, the trial court stated that one of its considerations was the "rights that . . . the minor victim, has, in particular in this case, with the finality of judgment and to be able to have closure and to proceed with sentencing."

Defendant does not cite any authority to support his argument that it was improper for the trial court to consider the victim's interest in proceeding with sentencing. The California Supreme Court has indicated that the opportunity to secure counsel of choice under the Sixth Amendment " 'is necessarily [limited by] the countervailing state interest . . . in proceeding with prosecutions on an orderly and expeditious basis.' " (*Ortiz*, *supra*, 51 Cal.3d at pp. 983-984.) The state interest in proceeding with a prosecution " 'on and orderly and expeditious basis' " (*id.* at p. 984) is not inconsistent with a victim's interest in the same. (See *Munoz*, *supra*, 138 Cal.App.4th at p. 867 [the "orderly administration of justice" applies "in both the pretrial and postverdict contexts"].)

Accordingly, we conclude that the trial court did not err in denying defendant's motion to discharge his retained counsel.

## IV. DISPOSITION

The judgment is affirmed.

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:


_____

ELIA, ACTING P.J.


_____

DANNER, J.


*People. v. Rojas-Cervantes*
**H047504**